(70 Misc. Rep. 101.)

## FONDA v. VILLAGE OF SHARON SPRINGS.

(Supreme Court, Trial Term, Schoharie County.    December, 1910.)

1. MUNICIPAL CORPORATIONS (§ 838*)—PUBLIC NUISANCE—DISCHARGE OF SEW- AGE INTO NATURAL WATER COURSE.

   The discharge by a village of sewage into a natural water course; rendering the waters thereof unfit for cattle to drink, and causing quan- tities of filth to stand in pools at times of low water, from which a noxious stench arises, is a public nuisance, the right to maintain which could not be given by grant or acquired by prescription.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1787; Dec. Dig. § 838.*]

2. MUNICIPAL CORPORATIONS (§ 838*) — PUBLIC NUISANCE — MAINTENANCE— STATUTORY AUTHORITY.

   Statutes expressly authorizing the construction of sewer systems with the approval of the State Board of Health give no authority for main- tenance of a nuisance involving consequent injuries to private property.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 838.*]

3. MUNICIPAL CORPORATIONS (§ 846*)—NUISANCE—POLLUTION OF STREAM—AC- TION AGAINST MUNICIPALITY—INJUNCTION.

   The owner of land injured from the discharge of sewage into a stream by a village may have such village restrained, though others contribute to the injury, and may recover from the village such damages as its acts have occasioned up to the time of trial, but such village should be given a reasonable time before enforcing the injunction in which to pro- vide for a different disposal of its sewage, the village in the meantime to pay the injured landowner his damages suffered during such period of suspension.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1772–1795; Dec. Dig. § 846.*]

Action by Ethelyn Fonda against the Village of Sharon Springs. Judgment for plaintiff.

Henry V. Borst and L. H. Jackson, for plaintiff.

George M. Palmer, A. B. Coons, and William A. McDonald, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LE BOEUF, J.  The plaintiff is the owner of a farm located in Schoharie county, a short distance from the village of Sharon Springs, and containing about 100 acres.  Prior to 1898 the farm was employed principally as a dairy farm.  It has been continuously so employed down to the time of the commencement of this action, and, according to defendant's witnesses, is peculiarly adapted for such use. It is watered by Brimstone creek, a stream of considerable width, but of comparatively slight depth in the summer time except for pools which form in it.  The primary usefulness of this stream to the plaintiff has been its use as the means of watering cattle, a large number of which have necessarily been kept upon this farm as a dairy farm. The farm depends almost entirely upon this creek for that purpose. Into this creek on the premises of the plaintiff there runs another small stream, which in the summer time is usually dry.  Prior to 1898 the waters of sulphur and magnesia springs in Sharon Springs ran into this stream.  The stream itself was a natural watershed for the surrounding country, the population of which does not seem to have materially increased since that time, except in the summer season. Besides the natural agents in the sulphur and magnesia spring water, certain artificial agents were added thereto for the purpose of medicated baths.  These baths were given in great numbers for many years prior to 1898.  There were some sources of contamination of this stream prior to 1898 which continued, in greater or lesser degree after 1898, other than the sewers of the defendant.  Notwithstanding these conditions, prior to 1898 the uncontradicted testimony is that this creek was used for bathing purposes; the stream was clear and pure; stock drank from it without objection; and its usefulness as a means of carrying on a dairy farm was clearly shown.

In the year 1898 the village of Sharon Springs installed a sewage system.  This was done under governmental authority, it is claimed. The outlet of this sewer is the creek.  Certain private sewers which formerly ran into the creek itself were carried into the municipal sewer.  The number of connections at the time of the trial of this action exceeded 100.  An attempt was made at preventing the sewage matter itself from passing into the stream.  This early fell into disrepair, and was not repaired at the time of the trial of the action.

Unprejudiced witnesses, employés of the state, assert that above the outlet of the municipal sewer at a point where it might be expected to be contaminated by the medicated baths and the springs, as well as the conditions which were claimed to exist above the outlet, the waters of Brimstone creek were apparently clear.  They did have that appearance which might be expected from sulphur waters, but they were apparently free from sewage.  These same unprejudiced witnesses claim that from the point where the sewer entered the stream great quantities of sewage matter were thrown by the defendant into the stream and the condition and appearance of the stream changed from that point.  In the summer time, when the stream is low, quantities of this filth exist in pools on the plaintiff's lands.  A noisome and noxious stench arises from the stream on her property, attributable in greater part to the defendant's sewer.  Alleged contaminating conditions between the outlet of the sewer and the plain-

tiff's farm were not sufficiently shown to warrant a finding that they contributed in any considerable measure to the conditions which existed on plaintiff's premises. They were of slight importance compared to defendant's sewer. The result of defendant's acts was gradual, from 1898 down to the time of the trial. The horses on plaintiff's farm will not drink the water of the stream. The cows will not drink the water unless they are compelled to. The conditions for the operation of the farm as a dairy farm have steadily grown worse, until, on November 2, 1908, the plaintiff maintaining a large number of cows was compelled to discontinue the sale of milk from these cows. Her customers refused to purchase the milk because of the contamination of the waters of Brimstone creek.

It is apparent that this stream was a watershed for the district surrounding the plaintiff's premises; that contaminating conditions of a certain character did exist prior to 1898, but, notwithstanding this, these conditions were not productive of the damage which I find the plaintiff has since the installation of the sewer system suffered.

1. Where a substantial damage exists, there must be a remedy. The defendant, however, contends, particularly because it is a municipal corporation, that no remedy exists. As between individual riparian proprietors, there is no question but that the lower proprietor is entitled to have the water of a stream pass through his lands in its natural condition, "with its purity unimpaired." Kelley v. Mayor, 89 Hun, 240, 35 N. Y. Supp. 1109. The testimony and maps in evidence disclosed that this condition of affairs affected, not only the plaintiff, but other property situated upon the stream. The defendant's use of the stream constitutes a public nuisance. In Bohan v. Port Jervis G. L. Co., 122 N. Y. 18–32, 25 N. E. 246, 250, 9 L. R. A. 711, it is said:

"Public nuisances are founded upon wrongs that arise from unreasonable, unwarrantable, or unlawful conduct working an obstruction or injury to the public and producing material annoyance, inconvenience, and discomfort."

It appears clear that a municipal corporation, simply by reason of its character as such, cannot maintain a public nuisance at the expense of this plaintiff, and that the plaintiff has a remedy in equity. Chapman v. City of Rochester, 110 N. Y. 273, 18 N. E. 88, 1 L. R. A. 296, 6 Am. St. Rep. 366; N. Y. C. & H. R. R. Co. v. City of Rochester, 127 N. Y. 594, 28 N. E. 416; Moody v. Village of Saratoga Springs, 17 App. Div. 207, 45 N. Y. Supp. 365, affirmed 163 N. Y. 581, 57 N. E. 1118.

2. The defendant claims, however, that it has obtained a right by prescription to discharge sewage into this stream and over the lands of the plaintiff. It points to the user of the streams as a watershed prior to 1898, and the use by some persons of sewers into the stream for more than 20 years, and then contends that this user must be tacked on to its user since 1898 to make the prescriptive period of 20 years. It may be said that no such defense is pleaded, and that fact would be sufficient to dispose of the contention. The defense is untenable, however, entirely apart from the question of pleading. The user of individual owners did not cause the damage of which

this plaintiff now complains. The user of the original owners was not of the same character as that use which the defendant now makes of the stream. The rights of individuals, if they existed at all, cannot be extended and amplified by the defendant in order to maintain a right of prescription. Prentice v. Geiger, 9 Hun, 350–353; American Banknote Co. v. N. Y. C. & H. R. R. R. Co., 129 N. Y. 252, 259, 266, 29 N. E. 302. But there is authority for the proposition that in no event could the defendant stand upon a prescriptive right, regardless of the lapse of years. The defendant was maintaining a public nuisance. There appears to be a distinction drawn as to prescriptive right between trespasses which may be permitted and which merely damage property and those trespasses which are contrary to public policy and constitute in themselves a public nuisance. The doctrine of prescription is usually based upon assumption of a grant which has been lost. No grant can be made of a right to commit a public nuisance. Kelley v. Mayor, supra; Mills v. Hall, 9 Wend. 315, 24 Am. Dec. 160. In the latter case the court said:

"There is no such thing as a prescriptive right or any other right to maintain a public nuisance. Admitting that the defendant's dam has been erected and maintained more than 20 years and that during the whole of that period it has rendered the adjacent country unhealthy, such length of time can be no defense to a proceeding on the part of the public to abate it, or to an action by any individual for the special and peculiar damage which he may have suffered from it."

3. The defense that the discharge of this sewage into this stream is under governmental authority is equally untenable. On the one hand, we find the state of New York showing its public policy by its decisions, going so far as to hold that a public nuisance cannot be maintained by an individual though it has been maintained against another for a period of over 20 years. We find many state statutes making it a crime to pollute streams. We find the decisions of the courts uniform in this state that such a pollution as this, even by a municipal corporation, constitutes an unlawful invasion of the rights of riparian owners. Acts of the Legislature, therefore, which in terms authorize the construction of sewer systems with the approval of the State Board of Health, do not constitute an authority for the maintenance of a nuisance and consequent injury to private property. Butler v. Village of White Plains, 59 App. Div. 30, 69 N. Y. Supp. 193; Moody v. Village of Saratoga Springs, 17 App. Div. 207, 45 N. Y. Supp. 365, affirmed 163 N. Y. 581, 57 N. E. 1118; Sammons v. City of Gloversville, 34 Misc. Rep. 459, 70 N. Y. Supp. 284, affirmed 67 App. Div. 628, 74 N. Y. Supp. 1145; Id., 175 N. Y. 346, 67 N. E. 622.

4. The defendant contends, however, that other sources of pollution exist which contributed to the damage which the plaintiff has sustained, and therefore she cannot recover. This, however, if it be true, bears upon the question of damage, and does not prevent the plaintiff from procuring injunctive relief and such damages as she may prove to have been sustained as the result of the defendant's trespass. Sammons v. City of Gloversville, supra. Under these authorities the plaintiff in this case is clearly entitled to injunctive relief and to such damages as she may have proven to have sustained.

5. The defendant challenged the plaintiff to assert whether this action was brought at law or in equity. The plaintiff elected to stand upon the complaint as a bill in equity, and the action was tried upon this theory without a jury. It is now contended by the defendant that the plaintiff cannot recover damages for more than six years prior to the commencement of the action. Plaintiff accepts this view of the case and claims damages for the six-year period and down to the time of the trial. This claim in an equity action is supported by Gerow v. Village of Liberty, 106 App. Div. 357, 94 N. Y. Supp. 949; Sammons v. City of Gloversville, supra.

6. The question of damage is the most difficult one to determine upon the proof submitted. It may be resolved, however, in the view which the court takes of the whole case. Certain facts are established which are not entirely dependent upon the testimony of interested witnesses. These facts are that the stream was clear and pure before 1898, and that it was capable of being used for the particular purposes for which it was useful to this farm, a use which gave a rental value to this farm. Later the waters of the stream, by reason of the acts of this defendant, were rendered unfit for that use, even though they may have been in part employed for that use from 1902 on to the date of the trial. The sources of contamination above the sewer outlet prior to 1898 had not interfered with that use, nor do they appear to have interfered with it since 1898. The sources of contamination which existed between the sewer outlet and the plaintiff's farm were not shown to be in any considerable measure different from those which existed prior to 1898. In fact, they were of comparatively little importance in considering the question of damage, although the court has considered them. Unprejudiced witnesses, state employés, make it clear that the damage of which this plaintiff seriously complains in the summer time is in larger part occasioned by this defendant. Unfortunately the evidence in this case on both sides on the subject of rental value appears to come from witnesses most of whom are more or less interested in the event. The plaintiff's witnesses, interested in this suit or other suits, place the rental value as high as $400 without the sewer and as low as $75 with it. It is claimed that error was committed in receiving their testimony upon this question of damage. These witnesses, however, were not experts testifying in answer to hypothetical questions. They testified to the conditions which existed in the stream with knowledge of its conditions, and based their judgment upon that knowledge. So far as the facts were concerned upon which they base their opinion, there was no speculation.

On the other hand, many of the defendant's witnesses, though claimed to be uninterested, were directly interested. One of them was connected with the Pavilion Hotel, which had discharged alleged contaminating matters into the stream. Another was the president of the village at the time of the installation of the sewer system. Others were officers of the town. The court in considering the testimony takes into consideration the demeanor of all witnesses upon the stand and their apparent interest in the event. These witnesses claimed that no damage whatever had been sustained, but there had been a depreciation in the rental value of this property. It is suggested that this resulted

from the sewer, but the suggestion is not worthy of notice. None of them, however, place the rental value of this farm at more than $200 per year, and most of them value it at less than that sum. The plaintiff continued to reside upon her farm. She continued to enjoy all of the crops therefrom without interruption. Undoubtedly the stream was nauseating as the result of the defendant's act, but no claim is made of illness resulting from this unhealthy condition.

Taking all of the evidence together, it appears to me that the damage which this plaintiff sustained should not be fixed at more than $50 per year. The same result may be reached by disregarding the testimony of all of the plaintiff's witnesses on the subject of loss of rental value. The defendant's witnesses, Jones and Winne, both agreed that this farm was specially adapted for dairying purposes. The farm was actually used for that purpose. They agreed that it was of not much use as a dairy farm unless it had water. The stock mainly obtained their water from Brimstone creek; and, since 1902, regardless of the fact that they drank it, the water was unfit for use by the stock. Mr. Winne, the defendant's witness, gave the rental value as $200 per year for the farm in 1908. He made a difference of $50 per year anyway in the rental value of the farm without the use of Brimstone creek for watering purposes. He was willing to increase this to one-half of the rental value of the farm if it were used exclusively for dairy purposes. Now the farm was used chiefly, though not exclusively, for dairy purposes. Applying the figures of Mr. Winne to the actual facts, the rental value of this property, regardless of the total amount, was depreciated by $50 per year. The plaintiff's damages prior to the trial of this action for six years at $50 per year would amount to $300, to which should be added $75 for the period of about a year and a half up to the time of the trial. The court finds that the plaintiff has sustained damage in the sum of $375 up to the time of the trial of this action.

Both questions are then decided against the defendant. The plaintiff has the right to remedy by injunction and to the damages which she has sustained.

A court of equity, however, must fairly consider the rights and interests of both parties. The policy of this state, as shown both by decision and statute, absolutely requires that water courses of this character throughout the state shall be maintained in a pure and wholesome condition. The rights and health of the citizens of the state are dependent upon the enforcement of this policy. The individual riparian owner is entitled to the maintenance of this condition of the stream, not only as against other individuals, but as against a municipal corporation. No prescriptive right either on the part of an individual or on the part of a municipal corporation exists to create a public nuisance detrimental to the rights and health of riparian owners upon streams. The state in granting its aid to municipal corporations to install sewer systems cannot and does not confer upon them the right to maintain a public nuisance of this character, except in such cases as permit condemnation upon the making of due compensation. A municipal corporation may be invested with power to obtain the rights of riparian owners by condemnation proceedings. It

cannot, however, obtain those rights by mere user, even for a period of 20 years. On the other hand, the needs of a village of the size of Sharon Springs must fairly be considered. The drastic remedy of injunction may not be employed in so arbitrary a manner as to result in needless inconvenience and damage to the inhabitants of that village. The village of Sharon Springs should be given a fair opportunity to, either by legislative or other appropriate act, be put in a position where it will not damage the lands of the plaintiff or abutting riparian owners.

An injunction may issue, restraining this defendant, its officers and servants, from continuing to discharge sewage from its sewer system into Brimstone creek in such manner that it passes upon and over the lands of the plaintiff, but providing that such injunction shall not take effect until the 1st day of January, 1912, provided the defendant pay to the plaintiff, in addition to the past damages awarded, the damage suffered by the plaintiff until such time. This action was tried at the January term, but was not finally submitted until about October 1st. The period intervening from the trial to January 1, 1912, will be about two years, and the amount in addition to past damages to be paid by the defendant during this period is fixed at the sum of $100.

Judgment may be entered accordingly, with costs to the plaintiff. The form of the judgment may be settled upon notice.

Judgment accordingly.