Waterloo Woolen Manufacturing Company, Claimant, *v.* The State of New York, Defendant.

## Claim No. 2085–A.

Court of Claims, April, 1922. ·

Claims — when state not liable in tort — when compensation will not be made for consequential damages — a manufacturer not entitled to damages for the roiling of water caused by dredging operations in the construction of the Barge canal.

In the absence of any statute waiving immunity and assuming liability the state cannot be held liable in tort. A statute waiving immunity and assuming liability would be in derogation of the sovereignty of the state. Such statute must be strictly construed and a waiver of immunity from liability must be clearly expressed.

There can be no recovery had for consequential damages resulting from a public work prosecuted in the public interests without trespass or negligence pursuant to legislative authority and direction but if in the prosecution of the work private property is destroyed the damages are not consequential and compensation must be made.

The claimant, a manufacturer of woolen goods, in the operation of its factory located upon land on and adjacent to the northerly bank of Seneca outlet, a navigable stream, at Waterloo, N. Y., uses a large amount of water which must be clean, clear and reasonably free from sediment. The water used was that flowing in said outlet, and diverted therefrom first through the old Cayuga-Seneca canal, thence through a privately owned fallway or hydraulic canal to claimant's factory. Under and pursuant to statute (Laws of 1909, chap. 391) the state, for the purpose of forming a channel sufficient for navigation purposes, conducted by its contractor dredging operations in the bed of said outlet upstream from claimant's land for a distance of between six and seven miles. The dredging was not confined at all places to the bed of the stream, but in order to better the alignment or reduce the curvature of the channel, cuts were made into the bank and through uplands forming beds in the stream. The pumping ashore of the excavated material behind dikes by the use of a floating hydraulic dredge necessarily and unavoidably roiled the water flowing into the stream, and in this roiled and turbid state the water flowed down to claimant's factory in a condition unfit for use therein. It was conceded that the dredging, which continued for about two years from August 13, 1913, was intelligently carried on without negligence or delay and that the roiled condition of the water was the inevitable and unavoidable result of the performance of the work. The operation of a filtration plant, the installation of which was begun by claimant in October, 1913, and completed in December of that year, removed the sediment from the water and so cleansed it that no damage resulted thereafter from the use of the water. Goods the manufacture of which had commenced before the filtration plant was completed were not in condition for market until after the filtration plant had been installed, and a portion of these goods when finished were of inferior quality due to the dirty water used at the initial stages of their manufacture, and other portions due to the same cause were necessarily refinished or redyed or otherwise rehandled, thus adding to the cost of manufacture. It was also claimed that the use of the filtration plant added to claimant's operating costs. *Held*, that as claimant was not damaged until by artificial means it diverted the roiled water from the stream and led it into its factory, the damage was not direct but was purely consequential, and a motion to dismiss the claim, upon the ground that the facts proven were insufficient to constitute a valid claim or cause of action against the state, will be granted.

MOTION to dismiss a claim for roiling of water in connection with canal improvement.

*Ernest G. Gould* (*Northrup R. Holmes*, of counsel), for claimant.

*Charles D. Newton*, attorney-general (*Edward J. Mone*, of counsel), for the State of New York.

SMITH, J. This claim has been filed to recover damages claimed to have been suffered by claimant as the result of the roiling of the waters of Seneca outlet by the state and its contractors in the course of the work of improvement of the Cayuga and Seneca canals pursuant to the provisions of chapter 391 of the Laws of 1909.

Claimant, as its name indicates, is a manufacturer of woolen goods and owns a factory plant located on lands on and adjacent to the northerly bank of Seneca outlet at Waterloo, N. Y. In its manufacturing processes it uses a large amount of water, which, to be suitable for its use, must be clean and clear, reasonably free from sediment. The water used by claimant was that flowing in Seneca outlet, diverted therefrom first through the old Cayuga-Seneca canal, owned by the state, thence through a privately owned fallway or hydraulic canal to claimant's factory. This use of the water was a property right which claimant owned as an appurtenance to its lands, the ownership of which it has established by *prima facie* proof uncontroverted by any evidence offered by the state.

In the course of the work of construction of the new or improved Cayuga and Seneca canals, pursuant to the provisions of chapter 391 of the Laws of 1909, the state by its contractors conducted quite extensive dredging operations in the bed of Seneca outlet upstream from claimant's lands for the purpose of forming a channel of sufficient width and depth of water for navigation purposes.

These dredging operations extended from Waterloo to Seneca lake, a distance of between six and seven miles. The dredging was not confined at all places to the bed of the stream, but, at points where it was necessary in order to better the alignment or reduce the curvature of the channel, cuts were made into the banks and through uplands forming bends in the stream. Of the total length of the canal from Waterloo to Geneva, the aggregate length of the cuts through uplands was about 3,900 feet. At many other places the banks of the stream were sliced off to afford the required width and alignment.

The dredging and excavation work was done by the use of a float'ng hydraulic dredge, by means of which the material to be excavated was loosened and, suspended in water, pumped ashore behind dikes built to retain it. This process necessarily and

unavoidably roiled the water flowing in the stream and in this roiled and turbid state it flowed down to claimant's factory in a condition unfit for use in its factory.

The dredging work started on or about August 13, 1913, and continued until about August 13, 1915. It is conceded by claimant that the dredging operations were intelligently carried on, without negligence or delay, and that the roiled and turbid condition of the water was the inevitable and unavoidable result of the performance of the work.

To render the water fit for use during the period of dredging, claimant was obliged to and did install a filtration plant, the installation of which was begun about October, 1913, and completed in December of that year. The operation of the filtration plant removed the sediment from the water and cleansed it so that no damage resulted from the use of the water after the completion of the installation of the filtration plant.

However, the manufacturing processes of claimant were so carried on that some goods, the manufacture of which had commenced before the filtration plant was completed, were not finished and in condition for market until after the installation of the filtration plant. These goods, or a portion of them, when finished were of inferior quality due to the dirty water used at the initial stages of their manufacture, and other portions, due to the same cause, were necessarily refinished or redyed, or otherwise rehandled, thus adding to the cost of manufacture. Also, it is claimed, the use of the filtration plant added something to claimant's operating costs.

The facts as have been stated have been established by the evidence, and in fact are not seriously, if at all, disputed by the state, and they furnish the basis of the claim against the state.

At the close of claimant's case and again at the close of the whole case, the attorney-general moved for dismissal of the claim upon the ground that the facts proven are insufficient to constitute a valid claim or cause of action against the state.

The specific proposition urged by the attorney-general in support of the motion to dismiss is that the work which the state was prosecuting was the improvement of the navigability of a navigable stream, a public work, in the public interest, pursuant to the specific authority, direction and command of the legislature, and that claimant's damage being the consequential, not the direct, result of such work, performed without negligence or trespass, is *damnum absque injuria.*

Claimant does not question the rule of law invoked by the state but contends that it is not applicable to the facts of the

instant claim for the reasons that its damages are not consequential but direct; in fact that they result from an appropriation of its property for which it is entitled to compensation (U. S. Const. Amend. V; State Const. art. I, § 6); that Seneca outlet was not, in its natural state, and is not a navigable stream, and that by virtue of the provisions of chapter 147 of the Laws of 1903 and chapter 391 of the Laws of 1909, under which the work was performed, as well as of section 47 of the Canal Law, the legislature has expressly assumed liability for all damages resulting from the state's work of canal improvement and maintenance.

I find nothing in chapter 147 of the Laws of 1903 or chapter 391 of the Laws of 1909 which waives any defense or immunity from liability available to the state or by virtue of which the state has assumed any new liability in a case such as this. It is true it has been held that by section 3 of the act of 1903, " New bridges shall be built over the canals to take the place of existing bridges wherever required, or rendered necessary by the new location of the canals," the state assumed liability for the cost of replacing bridges over the improved canals (*Lehigh Valley R. R. Co.* v. *Canal Board*, 204 N. Y. 471), but in the same case it was held that but for the provision quoted, there would be no such liability. Claimant's brief quotes from the opinion of Judge Gray in *Fulton Light, Heat & Power Co.* v. *State of N. Y.*, 200 N. Y. 400, 410, the expression " The act [Chapter 365 of the Laws of 1906, amending chapter 147 of the Laws of 1903] provides that * * * the Court of Claims should have jurisdiction to determine the amount of compensation for lands, structures and waters so appropriated, *or damages caused by the work of improvement*," but the italicised words do not appear in the statute and in Judge Gray's opinion do not purport to have been quoted from it.

In the *Fulton* case there was a formal appropriation of claimant's lands and water rights for which it was held compensation must be made, such compensation necessarily including not only the value of the lands and water rights appropriated, but the damage to unappropriated lands caused by the appropriation, which made the language quoted from Judge Gray apt and appropriate to the facts of that case.

In support of its contention that the legislature by enacting chapter 391 of the Laws of 1909 has assumed liability for all damages resulting from the improvement thereby authorized, claimant cites section 6 of that act which provides: " The sum of one million dollars ($1,000,000) is hereby appropriated, payable out of the moneys realized from the sale of bonds as provided by section two of this act, and from the proceeds of the sale of abandoned lands as provided in

section five of chapter one hundred and forty-seven of the laws of nineteen hundred and three, to be expended to carry out the purposes of this act; said sum of one million dollars to be paid by the treasurer on the warrant of the comptroller, after due audit by him, upon the presentation of the draft of the superintendent of public works to the order of the contractor, if for construction work, or to his own order if for the completion by him of any unfinished contract or for advertising for miscellaneous expenses connected with the said work, or upon the presentation of the drafts of the state engineer for supervising or engineering expenses in connection with said work or upon the presentation by the comptroller of accounts for miscellaneous expenses *or on the presentation of awards by the court of claims, \* \* \* for compensation for lands appropriated as provided in section four of said act* [Chap. 147, Laws of 1903, as am'd.], *or damages caused by the work of improvement hereby authorized."*

It is that part of the statute which I have italicised which claimant urges is an assumption of liability for all damages of any kind resulting from the work of the improvement.

I do not think the statute discloses any such intention. It is merely a provision appropriating money, which makes available the proceeds of the bond issue for the specified uses including such awards against the state as might be made by the Court of Claims for compensation or damages or both according to existing principles of law properly applicable to the claims on which the awards might be made.

It is clear that where it was necessary to appropriate private lands for the purpose of the canal improvement compensation must be made, which compensation must include not only the value of the lands appropriated, but as well the damage to, or the amount of the diminution in value of lands remaining unappropriated. These damages of course must and would be included in the awards of the Court of Claims when awarding compensation on account of the taking of private property, and of course provision must be made for the payment of such damages.

Also by section 47 of the Canal Law, the provisions of which will be considered later, the state had waived its sovereignty to the extent of placing itself in the same category with individuals and corporations and subjected itself to the same principles of law as to claims for damages arising out of its canals, and had conferred upon the Court of Claims jurisdiction to hear and determine such claims. By virtue of this provision valid claims against the state had arisen and no doubt would arise in the course of the improvement of the Cayuga and Seneca canal. Necessarily

provision must be made to render moneys available for the payment of such claims after awards by the Court of Claims.

There might likewise be valid claims for damages arising out of contracts for construction work which would also be subject to the jurisdiction of the Court of Claims, whose awards must be paid. Here was sufficient reason for and sufficient explanation of the language of the statute making moneys available for the payment of such awards. This statute discloses no intention to assume new and unprecedented liabilities and its distortion to include any such an intention would be unwarranted.

In the absence of any statute waiving immunity and assuming liability, the state cannot be held liable in tort. A statute waiving immunity and assuming liability would be in derogation of the sovereignty of the state. Such statutes must be strictly construed, and a waiver of immunity from liability must be clearly expressed. *Smith* v. *State of New York*, 227 N. Y. 405, 410.

Furthermore, section 26 of the Court of Claims Act (formerly a part of section 264 of the Code of Civil Procedure) provides: " In no case shall any liability be implied against the state, and no award shall be made on any claim against the state except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity." This is a general limitation upon the power of this court to make an award on any claim against the state, and is controlling in every case unless there is another statute whose plain and unmistakable provisions supersede its authority. This statute must be considered in seeking to determine whether any new and unusual liability has been assumed by the state by the enactment of section 6 of chapter 391 of the Laws of 1909. A harmonious construction of both must be adopted if that is possible (36 Cyc. 1146) as it is here. There is no conflict real or apparent. The act of 1909 merely appropriates money to pay awards which may be made upon claims against the state, established by evidence of facts which, by the application of existing principles of law, would establish liability against an individual or corporation if proven in a court of law or equity in an action against such individual or corporation.

By section 47 of the Canal Law the state has consented to be held liable on account of all matters resulting or arising from the neglect or conduct of any officer of the state having charge of its canals or arising or resulting from any matter or thing connected with the canals where, on a similar state of facts, an individual or a corporation would be liable. The section does nothing more than waive the state's immunity from liability on

account of its sovereignty, and consent that in matters connected with or arising out of its canal system it be treated as to liability for its acts as an individual or corporation would be treated in like circumstances. *Sipple* v. *State of New York*, 99 N. Y. 284; *Splittdorf* v. *State of New York*, 108 id. 205, 213; *Bowen* v. *State of New York*, Id. 166, 169.

Would an individual or a corporation be liable for damages such as claimant has suffered were he or it carrying on similar work under legislative authority and direction?

It is a settled and well-understood principle of law that no recovery can be had for consequential damages resulting from a public work prosecuted in the public interest, without trespass or negligence, pursuant to legislative authority and direction. *Lansing* v. *Smith*, 8 Cow. 146; *Ely* v. *City of Rochester*, 26 Barb. 133; *Radcliff's Executors* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 195; *Bellinger* v. *New York Central R. Co.*, 23 id. 42; *Atwater* v. *Trustees of Canandaigua*, 124 id. 602; *Benner* v. *Atlantic D. Co.*, 134 id. 156; *Fries* v. *N. Y. & H. R. R. Co.*, 169 id. 270, 276; *Smith* v. *Boston & Albany R. Co.*, 181 id. 132; *Gordon* v. *Ellenville & Kingston R. Co.*, 195 id. 137; *Chase-Hibbard M. Co.* v. *City of Elmira*, 207 id. 460; *Ramme* v. *Long Island R. R. Co.*, 226 id. 327, 334; *Warner* v. *State of New York*, 132 App. Div. 611; 204 N. Y. 682; *Pumpelly* v. *Green Bay Co.*, 80 U. S. 166; *Transportation Co.* v. *Chicago*, 99 id. 635; *Manigault* v. *Springs*, 199 id. 475; *Bedford* v. *U. S.*, 192 id. 217; *Jackson* v. *U. S.*, 230 id. 1, 11. This immunity from liability for consequential damages extends to individuals and corporations when such individuals and corporations have been designated and authorized by the legislature to perform a designated work in the public interest, as the cases cited above hold.

Of course if there is a taking of private property, or, which is the equivalent of a taking, private property is destroyed, the damages are not consequential and compensation must be made. *Oswego & Syracuse R. R. Co.* v. *State of New York*, 226 N. Y. 351; *American Woolen Co.* v. *State of New York*, 195 App. Div. 608; *Pumpelly* v. *Green Bay Co., supra; U. S.* v. *Lynah*, 188 U. S. 445; *Huffmire* v. *City of Brooklyn*, 162 N. Y. 584; *United States* v. *Cress*, 243 U. S. 316. Nor will an individual or corporation be protected by this rule in the maintenance of a public nuisance. *Noonan* v. *City of Albany*, 79 N. Y. 470; *Chapman* v. *City of Rochester*, 110 id. 273; *Seifert* v. *City of Brooklyn*, 101 id. 136; *Huffmire* v. *City of Brooklyn, supra; Fonda* v. *Village of Sharon Springs*, 70 Misc. Rep. 101; *Mann* v. *Willey*, 51 App. Div. 169; *Sammons* v. *Gloversville*, 175 N. Y. 346.

The principle is not involved in cases of disputes between riparian proprietors as to the reasonable uses of a stream of water where

there is no public work and no legislative authority or direction. *Strobel* v. *Kerr Salt Co.*, 164 N. Y. 303; *Storm King Paper Co., Inc.,* v. *Firth Carpet Co.*, 184 App. Div. 514; *Whalen* v. *Union Bag & Paper Co.*, 208 N. Y. 1; *Western N. Y. Water Co.* v. *City of Niagara Falls,* 91 Misc. Rep. 73; 176 App. Div. 944; 226 N. Y. 671.

In the instant case there was being performed a work of great importance in the public interest. It was being performed pursuant to specific legislative authority and direction. The statute directed to be performed the specific work of which claimant complains. The Cayuga-Seneca canal could not be widened, deepened and straightened without roiling its water. This, claimant admits, was the inevitable and unavoidable result of the work, which was performed expeditiously and without trespass or negligence.

The state was exercising its legal rights in improving this canal.

Seneca outlet is a navigable stream and was such in its natural state. That it was navigable and navigated in its natural state, except at the rapids and falls at Waterloo and Seneca Falls, is a fact which history records, so well known as that it may and should be judicially noticed. *DeCamp* v. *Thomson*, 16 App. Div. 528; *Buffalo Pipe Line Co.* v. *N. Y., L. E. & W. R. Co.*, 10 Abb. N. C. 107. Also the fact has been satisfactorily established by undisputed evidence in the record. In an action brought by this claimant against a state officer it was found and decided as a fact that this stream is a navigable public highway. *Waterloo W. Mfg. Co.* v. *Shanahan*, 128 N. Y. 345, 356.

It is the nature of the stream in its entirety which determines its character as to navigability, and its general character is not affected by the fact of the rapids and falls at Waterloo and Seneca Falls. *Morgan* v. *King*, 35 N. Y. 454; *Matter of Com'rs of State Reservation*, 37 Hun, 537; *Water Power Co.* v. *Water Commissioners*, 168 U. S. 349.

But whether the outlet be considered as a navigable stream or as a state canal, the result is the same. In either case the state had the right to improve navigation conditions. Nor is the rule invoked by the state confined in its application to works of improving navigation. It is equally applicable to building a railroad and grading a street. None of claimant's property has been taken, nor has there been any invasion of its lands. There has been no addition to water of any chemicals or other foreign substance, no pollution, no public or private nuisance. The interference with claimant's use of the water was not permanent but temporary. The dredging operations were carried on above the falls at Waterloo, upstream from claimant's lands and in that part of the stream which had always been practically navigable and which for scores

of years had been a part of the state's canal system, actually and extensively navigated. No waters which would otherwise have flowed over or along claimant's lands have been diverted therefrom, nor is any such claim made.

It is not even claimed that the roiled water flowing on down past claimant's lands in any way damaged claimant's land or other property. It was not until the claimant by artificial means diverted the roiled water from the stream and led it into its factory that damage ensued. The damage was not direct, nor did it constitute a taking of its property. The damage was purely consequential. Upon a similar state of facts recovery could not be had against an individual or corporation and, hence, cannot be had against the state.

The motion to dismiss should be granted, with an exception to claimant. An order to that effect may be entered.

Having reached the conclusion that the claim should be dismissed as matter of law, the requests for findings of fact have not been passed upon and no findings of fact have been made.

Ackerson, P. J., concurs.

Ordered accordingly.