[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 383 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 384 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 385 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 386 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 387 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 388 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 389 
Prior to the partition of the premises which were formerly owned by Aiken, Dickinson, and Goodman, those parties were seized in common of the water course running through their lands, and of the advantages arising from the use of the water to propel mills and machinery. *Page 390 
When they came to make partition of the lands, they at the same time by mutual agreement changed and modified the course of the stream, or so much of it as might be usefully applied to hydraulic purposes, so as to transfer the place of applying the power from the natural channel to an artificial one, running from the dam across all the lots; and they agreed to maintain and uphold the dam, at their common expense, upon certain principles of contribution agreed upon and defined in the partition deeds. They also agreed by those instruments, that all the parties, in regard to their respective lots, should be entitled to a just and reasonable participation in the use of the water of the creek for mills and machinery, which they might respectively construct upon such lots. The effect of this transaction was, that each proprietor thereafter became entitled to the same rights in the water running in the artificial channel, which they would have had if it had been the natural course of the creek. Indeed the object of the partition was to create a number of mill sites upon the artificial water course and to divide them among the proprietors; and in the absence of any special agreement defining their respective proportions in the water power, the only principle upon which it can be divided is to assign to each the proportion of the fall which is capable of being enjoyed upon his own lot, according to the rules which prevail among riparian proprietors whose lands lie above and below upon the same natural water course. Such, I think, is the meaning of the covenants in the deeds; and it is apparent that such has been the understanding of the proprietors. The plaintiffs acted upon this principle when they established the level between their lot and the one next below it, by means of the permanent iron monument which they caused to be set into the ground upon the division line between those lots. The referee appears to have assumed the same principle, and I do not understand either of the parties, in their pleadings or in the argument before us, to dissent from this view *Page 391 
of the case. In determining the rights of the parties to this suit, I shall therefore endeavor to apply the law which would govern the case, if the artificial channel were in fact a natural water course running through the adjoining lots of the plaintiffs and the defendant.
Assuming these data to be established, the remaining questions do not present any difficulty. Each proprietor of a lot is entitled to the benefit of the fall of the water upon his own land. He has not a right to set the water back upon the proprietor above him, nor can he lawfully dig into the soil of the proprietor below for the purpose of discharging the water upon the lot of such proprietor at a lower level on the division line than the surface of the soil in its natural state would permit. Each proprietor, in availing himself of the fall upon his own land, must take care that he does not abridge the same right existing in either of the neighboring proprietors on each side of him. These are the rights of the respective proprietors among themselves in the absence of any fact to raise the presumption of a grant from one of them to the other. But if one proprietor has, during a period of twenty years or more, possessed and used a portion of the hydraulic property belonging to another proprietor, not by license or favor, but adversely and in derogation of the rights of such other proprietor, the law, upon considerations of policy and for the purpose of quieting a long possession, will presume a grant from the proprietor thus intruded upon to the other, and will preclude the party who has thus acquiesced from asserting the right which he otherwise would have had. (Angel on Water Courses, p. 77, ed. 1833; Belknap
v. Trimble, 3 Paige, 577; Smith v. Adams, 6 id., 435;Baldwin v. Calkins, 10 Wend., 577; Sackrider v. Beers,
10 John., 241.) The omission of one of the proprietors to make use of the right which belongs to him, and which is to be exercised on his own land, however long such omission may be continued, will not prejudice him or confer and right upon the adjoining *Page 392 
proprietors. (Bealey v. Shaw, 6 East, 208, 214; Crooker
v. Bragg, 10 Wend., 260, 266; Butz v. Ihrie, 1 Rawle,
218.) The referee in this case has found that the bulk-head recently erected by the defendant does not set the water of this stream back, so as to raise it above the surface of the ground at the division line between lots numbers one and two, either as that surface now is, or as it was at the time of the execution of the partition deeds. The defendant has, therefore, done nothing which he was not justified in doing, provided the rights which he originally had have not been lost or impaired by acquiescence in some encroachment by the plaintiffs or those under whom they claim. The further finding that the defendant's new bulk-head and other obstructions have raised the water higher, and set it further back, than it had been raised or set back by any obstructions existing on that lot at any time within twenty years past, is unimportant; for if the defendant and those whose title he has, had made no obstructions, and had never availed themselves of their water rights at all, it would not have prevented his now doing so, nor would it have conferred any rights upon the plaintiffs. The real point in litigation between these parties was whether the plaintiffs had established a right by occupancy for twenty years or more, to discharge the water from the tail race of their mill upon the defendant's land at a lower level than the natural surface of the earth at the point of division; or, in other words, whether the defendant had lost a portion of the fall upon his land, by acquiescence by him and his predecessors in an encroachment upon that fall by the plaintiffs. Although this point was litigated upon the pleadings and by the proofs, and so far as I can see was the only material question in the case, the referee has intentionally omitted to pass upon it. There is some obscurity in the report, but according to my understanding of it, the wrong of which the defendant is supposed to have been guilty, and from continuing which he is to be permanently enjoined, is *Page 393 
raising the water higher than he or his predecessors in the title had ever before done; but inasmuch as he has not now raised it so high as to set it back upon the plaintiffs' lot in its natural state, he has, as before remarked, done no wrong to the plaintiffs, unless they have become entitled to a part of the fall on the defendant's land by reason of an occupation for twenty years. Such occupation is not found by the referee, who seems to be of opinion that the defendant has forfeited his right to the fall by non-user. The decree which he conceives the plaintiffs entitled to, is one which shall restrain the defendant from using his bulk-head in such a manner as to set or flow the water back and raise it higher in the race way upon lot number two than it was set back or flowed and raised by the bulk-head,c., on lot number one, for the twenty years immediately preceding the time the defendant erected the bulk-head on his lot, shortly before the commencement of the suit. I am unable to reconcile this with the formal announcement of the ground upon which the referee states that his decision is based, which is, in effect, that the plaintiffs have a right to discharge the water from their lot on to the plaintiffs' at the same height which they have uninterruptedly done for twenty years before the erection of the plaintiffs' bulk-head. This last proposition accords precisely with what I conceive to be the law of the case; but it is quite inconsistent with the prior decision of the referee in which he holds it to be immaterial whether the plaintiffs' water-wheel and race way are or are not now lower than they have been during a portion of the preceding twenty years. The judgment of the court actually entered establishes the title of the plaintiffs to their works as they existed immediately prior to the erection of the new bulk-head on the defendant's lot, and enjoins the defendant against disturbing them, when, for aught that appears, the race way may have been deepened and the wheel depressed within those twenty years to the *Page 394 
full extent which the defendant has, by his new bulk-head raised the water in that race way.
I am of opinion that the case has not been determined upon correct legal principles, and that there should be another trial in which the fact, principally in litigation, should be passed upon.
The judgment of the supreme court should be reversed, and a new trial had before the referee, or in such other manner as that court may determine.
All the judges, except MARVIN, J., concurred in the foregoing opinion and conclusion.
MARVIN, J., delivered an opinion expressing the same views as to the law contained in the foregoing opinion; but from the referee's report he understood him to find, as matter of fact, that the plaintiffs had exclusively and uninterruptedly, during more than twenty years, used the water and discharged it on to the defendant's lot, at the same level as it flowed when the latter made the erections and set the water back as complained of, and he was therefore in favor of affirming the judgment, on the ground that the plaintiffs by such enjoyment had acquired a right to such privilege.
Judgment reversed.