## SUPREME COURT.

ERASTUS CORNING and JAMES HORNER agt. THE TROY IRON and NAIL FACTORY.

A defence of title by *adverse possession* cannot prevail beyond the limits of the *actual possession.*

Thus, where the defence was sought to be sustained by evidence of actual adverse possession limited to the land *on the shore,* and not embracing the land under water opposite to the center of the stream,

*Held,* no defence to an action of ejectment for the bed of the stream to its center, and opposite to the premises so claimed to be held adversely.

That is, the adverse possession of the land on the bank of the stream did not carry such possession by legal presumption or constructively to the center of the stream.

*Albany General Term, March,* 1861.

GOULD, HOGEBOOM and PECKHAM, *Justices.*

THIS is an appeal by the plaintiffs from a judgment entered on the verdict of a jury in a cause tried before Justice HOGEBOOM, at the Rensselaer circuit held in May, 1860. The action was ejectment to recover a small tract of land containing about 4650 square feet, located partly

on the south bank of the Wynants kill in the city of Troy, and partly in the bed of the stream and immediately in front of the extensive and costly iron works of the defendants. The case is voluminous, and several questions of law and of fact were discussed at the trial and at bar. It is unnecessary to state them at length, as those upon which the case is decided sufficiently appear in the opinion of the court.

A. J. PARKER and D. L. SEYMOUR, *for plff's, appellants.*
W. A. BEACH, *for defendants, respondents.*

By the court, HOGEBOOM, Justice. The premises sought to be recovered in this action, embraces land partly on the south bank of the Wynants kill, and partly in the bed of the stream, covered by a dock erected by the defendants.

The defendants at the trial, relied, among other things, on the defence of adverse possession; and this defence was sought to be maintained by evidence of actual adverse possession, limited mainly, if not exclusively, to the land on the shore, and not embracing the land under water. The court among other things charged the jury, that if the defence of adverse possession was maintained as to the premises in dispute, comprising the south bank of the stream, the plaintiffs could not recover for the bed of the stream south of the center line and opposite to the premises so held adversely; and that notwithstanding the plaintiffs might have shown a good paper title to the entire premises in dispute, yet if the defendants had proved that they had occupied the south bank at the point in question adversely, so long as to establish a defence as to such bank, it would give to the defendants the right to hold to the center of the stream, and would defeat this action as to the bed of the stream. To each portion of this charge the plaintiffs duly excepted. The effect of it was to declare that an adverse possession of the land on and adjacent to the bank

of a stream of water, for a sufficient time to mature a title, would be carried constructively and by operation of law to the center of the stream without any actual adverse occupancy of the land under water in the stream itself. In this I think that the judge at the circuit erred. It was something more than charging that a riparian proprietor, confessedly in the actual and notorious occupancy of lands upon the shore of a stream of water, might not be obliged to establish his occupancy of the bed of the stream by evidence of acts of possession as plain, palpable, notorious, exclusive and frequent as those relating to the land not under water. It was a charge that by operation of law, occupancy of the bank, not only presumptively, but necessarily, was occupancy to the center of the stream. I think this was going too far; for it is quite possible to conceive that while one party was actually occupying the land on the bank, his neighbor and adversary might be in the actual and hostile possession of the land under water in the bed of the stream, directly adjacent thereto. (*Townsend* agt. *McDonald*, 12 *N. Y. R.*, 381; *Olmsted* agt. *Loomis*, 10 *N. Y. R.*, 423.) Independent of this there are several reasons why adverse possession should not be permitted to prevail beyond the limits of the actual possession. In the first place, the statute says so. The adverse possession, if founded upon a written instrument, is limited to four cases, the third and fourth of which have no bearing on the present question. The first and second cases are as follows : " 1. Where it (the land) has been usually cultivated or improved. 2. Where it has been protected by a substantial inclosure. (3 *R. S.*, 5th ed., 503, sec. 83.") The two succeeding sections are as follows : " Sec. 84. Where it shall appear that there has been an *actual continued* occupation of premises under a claim of title, exclusive of any other right, but not founded upon a written instrument or a judgment or decree, the premises, *so actually occupied, and no other*, shall be deemed to have been held adversely. Sec. 85.

For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument or a judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only : 1. Where it has been protected by a substantial inclosure. 2. Where it has been usually cultivated or improved." These citations are from the Code of Procedure, but the previous statute was in substance the same and in language nearly identical. (2 *R. S.*, 294, *secs.* 10, 11, 12.) In the next place the decisions are, that the possession must be marked by distinct boundaries. (*Brant* agt. *Ogden*, 1 *John.*, 156 ; *Jackson* agt. *Waters*, 12 *John.*, 365 ; *Jackson* agt. *Warford*, 7 *Wend.*, 62 ; *Jackson* agt. *Halstead*, 5 *Cow.*, 216.)

Again, if actual occupancy of the bank is constructive and *prima facie* sufficient occupancy to the center of the stream, it will be seen that serious difficulties might arise in determining the question of title. Suppose the deed and the actual paper title of the opposite riparian proprietor on the north carries him to the shore on the south, may he maintain ejectment for the land under water south of the center of the stream against the adverse possessor of the south bank ? Would not the latter be permitted to say, " I have not encroached upon you ; I had a perfect right to the bank, and that is as far as I have actually occupied or claimed." It seems to me that the test must be (where there is no conflict of paper title) *actual* occupancy, measured by a distinct, visible and marked, and not by a presumptive or constructive possession. I think this view is not effectually answered by the argument that adverse possession presumes a *grant*, and a grant must be presumed to extend to the center of the stream. If an adverse possession is founded upon the idea of a *grant*, which I do not admit, and which, if countenanced by the earlier cases, ought, I think, to be repudiated, because it is at known variance with the actual truth ; the grant must, I think,

be presumed to be *only co-extensive* with the actual limits of the adverse possession—a grant with boundaries corresponding with the exterior lines of the actual possession. Such a description in a grant would not carry the land to the center of the stream, but only to the shore, for it is undeniable that a deed bounded expressly upon the line of the shore, would altogether exclude the land under water. The reason why a deed bounded generally upon a stream of water carries to the center is, that the stream thus defined is supposed to be a *line* without width in the centre of the stream, and not a *space* having width and extent as appearing upon the face of the earth.

It is because the deed itself, as properly read and construed, by the force of its terms, bounds the land by the center line and not by the shore line of the stream. (*Hammond* agt. *McLocklan*, 1 *Sand. S. C. R.*, 323; *Herring* agt. *Fisher*, 1 *id.*, 344; *Adams* agt. *Rivers*, 11 *Barb.*, 390; *Demeyer* agt. *Legg*, 18 *Barb.*, 14; *Jackson* agt. *Hathaway*, 15 *John.*, 447; *Hooker* agt. *Utica & Minden Co.*, 12 *Wend.*, 370; *Imlay* agt. *Union Branch R. R. Co.*, 26 *Conn.*, 249; *3 Kent's Com.*, 433.)

If these views are correct, the judge at the circuit committed a material error in his charge to the jury, and one which we are not at liberty to disregard, for it may have had a vital bearing upon the verdict. And it is one which must result in a new trial, however much we may regret that a cause apparently so sharply litigated and closely tried, should be remanded. The disposition of this question makes it unnecessary to examine several other serious and interesting questions which present themselves in the case.

The judgment of the circuit court must be reversed, and a new trial granted, with costs to abide the event.