EDWIN ALLEN STEBBINS and HENRY H. STEBBINS, as Executors of HENRY H. STEBBINS, Deceased, and Others, Appellants, Respondents, v. FRISBIE & STANSFIELD KNITTING COMPANY, Respondent, Appellant.

Fourth Department, May 17, 1922.

Waters and watercourses — action to restrain defendant from using water from canal in excess of amount specified in its leases and for damages — counterclaim for damages for failure to supply water up to that amount — canal artificial channel owned by plaintiffs — defendant owned land along canal and had leases for use of certain quantity of water — State enlarged intake of canal — judgment concerning use of waters failed to determine right of canal owners and lessees in any surplus water — defendant, apparently, used water in excess of leased amount for years — provision in rent receipts that no prescriptive rights should arise from such use — defendant had no riparian rights and had acquired no prescriptive rights and had no right to excess use through practical construction of leases — doctrine of practical construction applies only where there is ambiguity — defendant had right to use water only as provided by leases — damages — plaintiffs' damages should be based on value of excess use by defendant regardless of whether water might have been wasted if not so used — findings as to damage to defendant too indefinite to form basis of judgment.

In an action brought by the plaintiffs to restrain the defendant from using water for hydraulic purposes from a canal in excess of the amount specified in its leases and for damages, the defendant counterclaiming for damage for failure to supply water in that amount, plaintiffs should have been granted the relief sought, where it appeared that the canal was an artificial channel built by the plaintiffs' predecessor, who at the time, as riparian owner, was entitled to the use of one-half of the water flowing in the Oswego river for the purpose of the canal; that the defendant was the owner of certain land along the canal and had two leases for the use of a definite amount of water; that between the dates of the defendant's two leases the intake of the canal had been enlarged by the State; that a judgment in an action brought before the date of the defendant's first lease provided for the regulation of the use of the amount of water mentioned in the existing leases as the total usable water, but it did not determine the rights of the owners of the canal or lessees as to any surplus water; that the defendant, apparently, had for years used water in excess of the leased amount but the rent receipts or the bills for rent specifically stated that the proprietors waived no claims for excess water used and that no consent to a continuation of excess use should be implied.

The canal not being a natural stream, the defendant had no rights as a riparian owner, no prescriptive rights had been obtained by it; and no practical construction of the leases, allowing the use of surplus water, could be claimed, as the doctrine of practical construction applies only where there is ambiguity and in this case there was none; consequently the defendant had the right to use only the water definitely fixed by its leases.

The plaintiffs' damages should have been based on the value of the excess water used by the defendant regardless of whether or not the water so used might otherwise have been wasted.

The findings of the referee as to damage caused defendant by the failure of the plaintiffs to supply usable water as leased were too indefinite to form the basis of a judgment.

APPEAL by the plaintiffs, Edwin Allen Stebbins and others, from so much of a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oswego on the 20th day of November, 1918, upon the report of a referee appointed to hear and determine the issues, as dismisses the complaint.

Appeal by the defendant, Frisbie & Stansfield Knitting Company, from so much of said judgment as dismisses the counterclaim upon the merits.

*Ernest B. Millard* [*Arthur E. Sutherland* of counsel], for the plaintiffs.

*Harry C. Mizen* [*John D. Kernan* of counsel], for the defendant.

SEARS, J.:

This action was brought for an injunction to restrain the defendant from using water for hydraulic purposes in excess of a given amount, and for damages for the use of water beyond such amount before the commencement of the action. The defendant demanded damages by way of counterclaim for a negligent failure at times to supply water up to such amount. The learned referee before whom the issues were tried dismissed both the plaintiffs' complaint and the defendant's counterclaim. The plaintiffs claim to be the owners of the Varick canal and of the right to use its water, subject to certain leasehold interests granted by them and their predecessors in title. The defendant is the owner of certain land, occupied as a mill site, over part of which the water of the Varick canal flows, and also is the lessee of certain rights to use the water of the canal for the development of hydraulic power.

The plaintiffs base their demand for relief upon a use of water by the defendant in excess of the amounts specifically mentioned in their leases of water power. The defendant while not disputing such use, seeks to justify it under various claims: (1) That as owner of a mill site it is entitled to use the water just as any riparian proprietor upon a natural stream is entitled to the use of the

stream; (2) that it has gained the right to use surplus water by prescription; and (3) that the leases have been practically construed by the parties to entitle the defendant to the use of the surplus water.

The Varick canal is situated along the west side of the Oswego river from which it takes its supply. Its length is about one-half mile. The canal is entirely artificial, having been constructed for the development of power by one Abraham Varick about the year 1834 upon his own property — hence its name. At the time that Varick constructed the canal which leads from a dam in the river maintained by the State, as riparian owner, he was entitled to the use of one-half of the water flowing in the Oswego river for the purpose of the canal, subject to the rights of the State to use the water for canal and navigation purposes. (*Varick* v. *Smith*, 5 Paige, 137.) Prior to 1875 Abraham Varick and his successors in title had leased in perpetuity all of the lots between the canal and the river, with the right to draw various quantities of water from the canal, except the land thereafter acquired by the defendant, and a parcel of land at the southerly end, including the intake of the canal, which the plaintiffs now own. The total usable water mentioned in these leases was designated as fifty runs of first-class water (the right to use three runs of which in 1875 remained in the owners of the canal) and seventeen runs of second-class water. The owners of the fifty runs of first-class water were entitled to be supplied with their full quotas before any water was applicable to the requirements of the owners of runs of second-class water. In each of the leases an annual rental for the use of the water was reserved with provisions of forfeiture in case of non-payment. About 1875 Michael Cummings, who was the owner of certain of the leases, brought an action in the Supreme Court against all persons having an interest in the canal, in the mill lots adjoining the canal, and in the water rights, to obtain an adjudication fixing and determining all the rights and liabilities of the various parties. This action resulted in a judgment for the relief sought. The judgment, among other provisions, determined the method by which the water should be drawn from the canal in so far as the fifty runs of first-class water and the seventeen runs of second-class water were concerned, but did not fix and determine the rights of the owners of the canal or of the lessees as to any surplus water beyond the fifty runs of first-class water and seventeen runs of second-class water, although it had been claimed in the complaint that there was a large amount of such surplus water.

The judgment appointed commissioners for the purpose of determining and fixing the levels, plans, dimensions and construction

of the weirs and apertures where water should be taken, and of regulating the manner of drawing such water. During the years 1876 and 1877 the commissioners appointed in accordance with the judgment regulated the use of water by the lessees when there was less water flowing in the canal than was necessary to supply all of the lessees, but since that time the commissioners, although still in office, have never regulated the use of the water flowing in the canal in any manner, nor were they requested so to do until a request was made of them by the plaintiffs in 1911. Upon receiving such request, the commissioners notified the lessees that on the 4th day of December, 1911, they would begin to regulate the use of the water as required by the Cummings judgment, but they were restrained from doing so by an injunction order issued before that day. The injunction order contained a recital to the effect that the moving parties were abundantly responsible, and that no one would be injured by the restraint of the commissioners' proposed action.

The defendant's mill site consists of three parcels of land — the north and south halves of block 66 and a fifty-foot strip south of block 66. The deeds conveying the south part of block 66 expressly exclude any water rights in the canal, but no such clause is contained in the deeds to the other portions of the defendant's property and as to these parcels defendant claims water rights in the canal as an appurtenance to the land.

The defendant is also the owner of two leases of water power rights. The first lease was dated the 26th day of December, 1884, and granted the right and privilege of drawing from the Varick canal a quantity of water sufficient when applied in the most approved manner, to turn three runs of millstones in a well-constructed flouring mill with a provision that if at any time there should not be sufficient water in the canal to turn fifty runs of millstones with the usual machinery connected therewith, then the lessee should suffer three-fiftieths part of the deficiency, and draw only the remainder, and the lease further provided that the surplus water which might be flowing in the canal after supplying fifty runs of stones with first-class water in the dryest season of the year should be called second-class water. It was provided that the water was to be used and employed on canal lots 7 and 8 of block 66 and not elsewhere, and to be applied to any machinery or mill except a sawmill.

The second lease was dated January 30, 1905, and was a lease of a quantity of first-class water equal to 3,000 feet per minute drawn from the canal at an average available head of 13 feet, and of second-class water a quantity equal to 4,500 feet per minute

drawn from the canal at an available average head of 13 feet, with a proviso that the waters should be drawn and used upon block 66. The lease had numerous other provisions and the quantity specified equaled two runs of first-class water and three runs of second-class water. This lease referred to the Cummings judgment for a definition of first-class and second-class water.

Both of the leases were in perpetuity with rent reserved and provisions for forfeiture in case of failure to pay rent.

On the 13th day of February, 1907, the defendant's predecessor entered nto a contract with the owners of the canal by which it was agreed that the defendant's predecessor and its successors should be permitted thereafter to draw three runs of first-class water and two runs of second-class water covered by the leases above mentioned through a new opening in the canal within the fifty-foot strip south of block 66. In this instrument the lessee covenanted that the rights thereby given to the lessee should be subject to all other conditions contained in the original leases.

In 1897 the State reconstructed the headgates of the canal, widening their opening so as to allow the passage of approximately nineteen per cent more water than did the gates in use before that time.

The waterwheels of the defendant and its predecessors continuously since 1884 have had a capacity largely in excess of the runs of water from time to time leased to the defendant and its predecessors.

If this were a natural waterway unquestionably an owner of the banks of the stream would be entitled to use the waters for any reasonable purpose provided he did not interfere with the rights of those down stream, and there being no one down stream from the defendant's land upon this canal, the defendant would have the right to use all of the water as appurtenant to its land. This, however, is not a *natural* stream but an artificial canal. It is a device or instrumentality to render the power latent in the water of Oswego river above the dam available for industrial uses. No other purpose has been suggested for the construction and maintenance of the canal. The original proprietor was a riparian owner upon the banks of the Oswego river which gave him in and of itself the right to use the waters for power purposes. The building of the canal or large mill race implies an ownership vested in the person constructing it and the situation bears no similarity to that arising upon a natural watercourse. (*Fox River Flour & Paper Co.* v. *Kelley,* 70 Wis. 287.)

The cases cited by the defendant from this State are distinguish-

able. *Warren* v. *City of Gloversville* (81 App. Div. 291) holds merely that a conveyance bounded upon an artificial waterway extends to the center of the waterway, a principle well recognized but having no application here. In *Townsend* v. *McDonald* (12 N. Y. 381) there was a grant to the owners of mill lots of a just and reasonable participation in water power rights in an artificial waterway, and under such circumstances the court held that the rights of the various grantees of the lots and water power were to be regulated in the same way as though the mill lots had been upon a natural stream. *Cheney Hammer Co.* v. *Collins* (172 App. Div. 932) is to similar effect.

As the defendant acquired no rights as a riparian owner, its rights must depend upon the leases which definitely limited the amount of water which the defendant might use unless the defendant has gained some right by prescription.

In 1884 defendant's predecessors installed machinery sufficient to use an amount of water largely in excess of that granted by the lease then in force, but there is scant evidence of any knowledge on the part of the plaintiffs of the amount of water taken. The plaintiffs' agent, who was the son of one of the plaintiffs, said, in effect, that he thought more water was being taken than was covered by the leases, but did not know how much. For many years prior to 1911 the defendant or its predecessors received from the canal owners receipts for water rentals containing the following clause: " This receipt in no case includes damages for overdraughts of water, unless so stated in the receipt; and then the amount so received, and the time for which received will ·be specified. In giving this receipt for rent, the proprietors waive no claim for overdraughts of water, and do not intend thereby, by implication or otherwise, to consent to a continuance of such overdraughts, or to agree that the quantity drawn is only what the lessee is entitled to use." The bills rendered after 1911 contained a like clause.

In 1907 the contract mentioned above fully recognized the terms of the leases and all their limitations. The taking of excess water cannot be said to have been open and notorious or even under a claim of right. In view of these facts, no right to additional surplus waters has been obtained by prescription, nor has a practical construction favorable to the defendant been made out. There is no opportunity to invoke the doctrine of practical construction because such doctrine is applicable only in case of an ambiguity and here there was none. The defendant's claim is directly contrary to the unambiguous terms of the leases.

The plaintiffs are entitled to injunctive relief. The instrumen-

tality for the realization of power, namely, the Varick canal, was the property of the plaintiffs, subject to outstanding leases for the use of a definite amount of water. It makes no difference where the balance of the water flowing over the defendant's property comes from, whether it is due to an increased supply of water or an enlargement of the basin from which the canal draws, or an enlargement of the headgates or a failure of millowners up stream to draw their quotas. The surplus has not been leased and is a part of the interest retained by the owners of the canal. The defendant must stand upon its positive rights which are definitely measured. There is no way that this property right of the plaintiffs can be protected except by injunction. The flow of water may, of course, to a certain extent be regulated at the gates, but it cannot be regulated so that only a specific quantity will flow past each millowner's intake. A proper case is made out for injunctive relief to protect the plaintiffs' rights as owners.

As to damages, the question is much more difficult. The referee has found, as is doubtless the case, that if the particular water used by the defendant had not been employed by the plaintiffs, it would have flowed over the spillway back into the Oswego river. If it were incumbent upon the plaintiffs, in order to recover money damages, to prove that the defendant has prevented the plaintiffs from making some use of the water which, except for defendant's acts they would have made, it must be conceded that they have failed. There is, however, another kind of damage — for example: When a person wrongfully occupies real estate, a recovery can be had for a substantial amount without showing that the owner, except for the defendant's occupancy, actually would have used the land. In this case the defendant repeatedly says that this surplus could not have been used by the defendant, but must necessarily have passed out over the spillway. As to this particular water, after reaching defendant's land, this is true. Nevertheless, the plaintiffs might have rented to other millowners higher up on the canal the use of surplus waters, subject, of course, to the prior use of the fifty runs of first-class water and the seventeen runs of second-class water. Such a use might well be designated as a use of third-class water as has been done upon the trial of this case. We look upon this case not as one where the defendant has merely used water which was about to lose its efficacy through a futile fall into the river, but as a case where there has been an unwarranted use by the defendant of a part of the plaintiffs' appliance or instrumentality for the realization of power. Therefore, the plaintiffs are entitled to recover the value of the power used by the defendant as damages sustained by the plaintiffs.

(*DeCamp* v. *Bullard*, 159 N. Y. 450; *Bunke* v. *N. Y. Telephone Co.,* 110 App. Div. 241; affd., 188 N. Y. 600.)

The referee's finding of $10,000 as the value of excess water power used by the defendant does not justify an award of damages in that amount without an amendment of the complaint as the plaintiffs have only asked for $8,200 damages in their complaint.

The defendant also asserts that it is entitled to a recovery of damages against the plaintiff for injury due to the negligent failure of the canal owners to furnish a canal capable of supplying at all times the full amount of water covered by the defendant's leases. The specific condition complained of is that the canal is not large enough to furnish the necessary supply of water when there is a large quantity of ice, which can only be flushed through the canal by a greater current.  The findings contained in the decision of the learned referee include the damages but fail to state definitely that all or any specific part of the damages was due to fault on the canal owners' part.

The Cummings judgment is not *res judicata* in this action but the duty of the canal owners to other lessees similarly situated is there adjudicated in the following language: " That it is the duty of Carrington and Pardee to enlarge the size of the said Varick Canal, and also of the gates and openings at the head of it, if necessary, as soon as practicable, to such extent as shall be sufficient to pass a full supply of water for the fifty runs of first-class water, and also for at least the seventeen runs of second-class water, which are already leased by them, and so control and regulate the same as to pass at all times the water of said river to the extent necessary for the full supply of said sixty-seven runs of water, and it is hereby adjudged and decreed, that said Carrington and Pardee make such enlargement, and control and regulate the said canal accordingly."

The decision in the present case implies that injury has resulted to the defendant to some extent through a negligent failure to supply usable water as leased, but the findings are too indefinite to base a judgment on them.  This can be corrected upon a new trial if such negligence and damage is found to have occurred.

The judgment should be reversed upon the law and the facts and new trial granted, without costs.

All concur.

Judgment reversed on the law and the facts, and new trial granted, before the same referee, without costs.  The 25th finding of fact is disapproved and reversed.