J. Robert Lynch, J.
The defendant City of Watertown lies wholly within the plaintiff County of Jefferson. The Watertown Housing Authority is a corporate body created for the city under the provisions of chapter 722 of the Laws of 1948. Its purpose is to construct and maintain low-rent housing projects. Its property is tax exempt (Real Property Tax Law, § 414; Public Housing Law, § 52). However, under the Federal law giving impetus to low-rent housing (50 U. S. Stat. 888, as amd.), the Housing Authority is permitted to make certain payments from Federal funds in lieu of taxes.
The Housing Authority has made these payments annually since 1953 under contracts with the city by which the city agreed to distribute the payments to those entitled under the contracts to receive them. Each year the city paid a share to the City of Watertown School District and kept the remainder. The county claims that it is entitled to receive a share of each payment and has brought suit accordingly.
The county moves now for summary judgment. Ho issues of fact are presented; the dispute is purely one of law.
*536 The pertinent parts of the city’s contracts are:
‘ ‘ 1. Whenever used in this Agreement:
5s
‘1 h. The term ‘ Taxing Body ’ shall mean the State or any political subdivision or taxing unit thereof, including the City, in which a Project is situated and which would have authority to assess or levy real or personal property taxes or to certify such taxes to a taxing body or public officer to be levied for its use and benefit with respect to a Project if it were not exempt from taxation.
# * #
“3. * * * The City shall distribute the Payments in Lieu of Taxes among the Taxing Bodies in the proportion which the real property taxes which would have been paid to each Taxing Body for such year if the Project were not exempt from taxation bears to the total real property taxes which would have been paid to all of the Taxing Bodies for such year if the Project were not exempt from taxation; ¡Drovided, however, that no payment for any year shall be made to any Taxing Body (including the City) in excess of the amount of the real property taxes which would have been paid to such Taxing Body for such year if the Project were not exempt from taxation.”
The city’s contentions are: (1) The county is not a “ Taxing Body” under the contracts’ definition; (2) if the county is entitled to share, it has waived its rights; (3) the six-year Statute of Limitations is a bar to the county’s cause of action; and (4) the county’s computation of its annual shares is incorrect.
Is the county a taxing body under the contracts’ definition! It is, if it falls in one of two categories — either it itself must assess and levy taxes against property or it must certify such taxes to a taxing body to levy for it.
Were the county operating under the authority granted it by section 900 of the Beal Property Tax Law, it would be perforce a taxer and levier itself. But it does not operate under that section. Instead, by virtue of an arrangement set forth in section 115 of the Charter of the City of Watertown (L. 1923, ch. 660, as amd.), the county derives its tax money from the city as follows: The county equalizes the city assessment rolls with those of the towns; it then ascertains and directs the amount of tax to be raised in the city for county purposes; the amount ascertained and directed is then certified by a county resolution to the City Assessor; the City Council then directs that the certi *537 fled amount be extended on the city assessment rolls and raised by tax according to the valuation fixed on those rolls.
This procedure makes the county a taxing body under the definition of the contracts. In fact the procedure is precisely described in the contracts where the definition includes a “ political subdivision * * * in which a Project is situated and which would have authority * * * to certify such taxes to a taxing body * 8 8 to be levied for its use and benefit with respect to a Project if it were not exempt from taxation ”.
The city contends that when it annually paid the amount certified to it as its share by the county and the county accepted it, the county thereby waived any right to the Housing Authority payment for that year; that the county is thus estopped from asserting the present claim. This contention seems to be based upon the hypothesis that each Housing Authority payment was, for all intents and purposes, a tax, and that each should be treated as though it were an integrated part of the tax paid each year by the city to the county.
But, call the payments what we will, the one thing certain is that they are not taxes. The Housing Authority’s property is tax exempt; the payments are in lieu of taxes. The law giving-rise to the money calls it a contribution (U. S. Code, tit. 42, § 1410, subd. [h]). The confusion evidently occurs because this Federal contribution or grant is to be distributed in the same proportions as it would if it were a tax. But viewing it as a tax solely for the purpose of apportioning it does not make it, contrary to the statutes creating it, a tax in fact.
An analogous situation would be presented where a municipality had a cause of action against a taxpayer, say, for destruction of municipal property. No argument would or could be advanced that this cause of action would be waived and the municipality estopped simply because the municipality had assessed and collected taxes each year against the taxpayer’s property. For a waiver, with its resultant estoppel, does not arise unintentionally (Alsens Amer. Portland Cement Works v. Degnon Contr. Co., 222 N. Y. 34).
Although we do not decide the point, we feel that there would be no waiver and estoppel even if the Housing Authority payments were considered to be taxes. (See Buchanan v. Town of Salina, 270 App. Div. 207.)
The city’s answer separately pleads the defense that the cause of action did not accrue within six years before the commencement of the suit. This defense is valid, in part.
The complaint is essentially one for money had and received. It alleges a separate sum due and payable each year from the *538 tax year. 1953 through 1962, each sum becoming payable on the date the Housing Authority made payment to the city. A separate cause of action thus accrued each year and the six-year statute bars those causes of action which accrued prior to six years before the commencement of this action (Strough v. Board of Supervisors, 119 N. Y. 212).
The summons herein was served on March 5,1963. The plaintiff is therefore barred from claiming any share of the payments made on the following days: On April 1, 1954 for the tax year 3 953; on May 5, 1955 for the tax year 1954; on May 4, 1956 for the tax year 1955.
When the city made payment each year to the School District, it arrived at the district’s share by prorating the total payment by the separate tax rates upon which taxes were in fact computed for that year. Following is the computation made for the tax year 1961 and sent to the School District; in its method it is typical of all the years.
“ 8925.33 (Amount Received) X .85 = 1,554.62 County Share
4.88 X 1.70 = 3,109.23 City Share
X 2.33 = 4,261.48 School Share ”
We note that these notices showing the “ County Share ”, while sent to the School District, were never sent to the county.
In its complaint the county simply adopts these computations made by the city and seeks the respective amounts shown as the ‘ ‘ County Share ’ ’. The city now says that its own computations were not in accord with its contracts with the Housing Authority— and it is right — they are not. The city is not estopped from asserting this argument (Spencer v. City of New York, 179 App. Div. 69), nor, in view of the taxpayer interest involved, should it be. But we fail to see how a correct computation will improve the city’s ultimate responsibility (except to have made proper computation a matter for judicial determination).
The city’s method of apportionment with the School District adopted the tax rates in force which themselves were based upon the Housing Authority’s projects being tax exempt. Yet the contracts say that the payments shall be apportioned on the basis of what the taxes would be if the projects were not tax exempt. The distinction is not academic.
' If the projects are treated as taxable property, then the total valuation of taxable property lying within the city increases. A chain reaction commences: the proportion of taxable property in the city in relation to the taxable property in the rest of the *539 county becomes greater; the total amount of money to be raised by the city for the county increases in proportion; the county’s percentage on distribution of the Housing Authority payment increases accordingly. Thus the county would be entitled to more money than accorded it under the erroneous computation.
The fact that the complaint’s computation is erroneous does not in this instance serve to defeat the cause of action. Bather, it serves only to limit recovery to the amount demanded in the complaint (Civ. Prac. Act, § 479; Stebbins v. Frisbie & Stansfield Knitting Co., 201 App. Div. 477).
The plaintiff is entitled to summary judgment against the defendant in the amount of $12,425.01, together with interest on the following sums from the date set down after each sum: $1,409.26, June 17,1957; $1,397.04, May 12,1958; $1,679.42, May 11, 1959; $2,037.25, May 31, 1960 ; $2,358.20, February 28, 1961; $1,554.61, March 31, 1962; $1,989.23, February 6, 1963; together with costs and disbursements.