THE JAMES FRAZEE MILLING COMPANY, Claimant, *v.* STATE OF
NEW YORK, Defendant.

## Claims Nos. 10007 and 17194.

Court of Claims, March, 1924.

**Claims against state — navigable watercourses — Seneca river — Baldwinsville canal — power of legislature over navigable waters — rights of riparian owners — rights conferred under Laws of 1809, chap. 54 — effect of exercise of right of eminent domain by the state under Laws of 1850, chap. 153 — damages awarded for diminution in value of land and water rights.**

A watercourse in order to be navigable need not be deep enough or of a nature to admit the passage of boats or other craft at all its parts nor need the navigation be open at all seasons of the year or at all stages of the water, and the public highway character of such a watercourse has been recognized and confirmed by various acts of the state legislature.

At common law as well as by statute such a watercourse was a public highway subject to the right of navigation common to all without regard to whether title to its bed was in the state or in a private owner.

The Seneca river, a continuous non-tidal stream, in its natural condition was sufficiently navigable and sufficiently navigated to give it the character of a public highway notwithstanding interruption of its navigability at places by rapids and obstructions.

The legislature of the state may grant the soil of or confer an exclusive privilege in navigable rivers or waters held by it for the people, or authorize a use inconsistent with the public right, or interfere with the rights of navigation so far as the public is concerned, when acting in the public interest, subject to the paramount control of the federal congress, and whether such a grant or privilege is in the public interest is for the sole determination of the legislature.

The general rule of the common law that every proprietor of lands on the banks of a river has an equal right to the use of water which flows in the stream adjacent to his land as it was wont to run, without diminution or alteration, is qualified by the rule that the state has the right to widen, deepen, clear, straighten and improve the channel of a navigable stream for the benefit of the public in facilitating navigation and transportation thereon.

A statute (Laws of 1809, chap. 54) declared that one B., his heirs or assigns, might erect and maintain a dam across the Seneca river at the head of McHarry's rift of such height as should be necessary for improving the navigation of the river not exceeding seven and one-half feet on the rapids above said dam, provided always and upon the express condition that not less than thirty feet of the dam should be so constructed as to admit the passage of rafts and boats down the river and provided also that B., his heirs and assigns, should erect and maintain a canal and lock for the passage of the largest boats usually employed on said river from above said dam to the still water, two feet deep below the same, said canal and lock to be at least twelve feet wide and the lock to be at least seventy-seven and one-half feet long within the gates and with a sufficient depth of water to pass boats drawing two feet of water when

35

loaded. The said statute authorized B., his heirs and assigns, to exercise eminent domain and to demand and receive tolls for passage through the canal and provided that it should and might be lawful for said parties to take and make use of the water in the said dam for the use of mills and hydraulic works or to any other use to which the same was capable of being applied upon land owned by B., his heirs and assigns, and that the privileges and advantages thus granted should continue for twenty years and no longer. By later statutes such privileges and advantages were continued in force until the acquisition by the state, under chapter 153 of the Laws of 1850, of the dam, locks and canal constructed pursuant to the statute of 1809, at the time of the enactment of which B. was the owner of riparian rights appurtenant to his upland. *Held*, that the said statute of 1809 constituted a contract between the parties by virtue of B.'s acceptance and compliance with the statute, which was intended to and did constitute an improvement of the navigation of the river.

The exercise of eminent domain by the state pursuant to said statute of 1850 did not within legislative intendment or in fact appropriate or take unto the state the impounded waters or the use of them beyond the quantity or extent necessary to the operation of the Baldwinsville canal and its locks.

The title to the remaining part of the impounded waters rested in the successors of B. and the power of the state under said statute of 1850 to regulate the manner in which the canal should be used and surplus waters drawn into it, did not authorize the destruction of said canal or its use or the flowing of surplus waters into it.

When about June 4, 1908, the state, pursuant to statutory authority entered upon the construction of the Barge canal at the location here in question it owned in fee the "Baldwinsville dam," the "Baldwinsville canal" which extended from a point in the northern bank of the Seneca river a short distance west of or above said dam or in its pool, easterly through the upland along the north side of the river and to a point thereon about twenty-five hundred feet or six-tenths of a mile east of and below the dam. The state at that time also owned the locks of the canal and had the right to maintain the dam at the crest height of seven and one-half feet and not higher and the first and superior right to appropriate and use for the canal and its locks twenty cubic feet per second of the impounded waters. On said 4th day of June, 1908, the claimant, which since 1892 has been the owner in fee simple of a strip of land at Baldwinsville of substantial width with structures thereon lying between the Seneca river on their southern side and the Baldwinsville canal on their northern side, constituting a plant for the manufacture of flour, and the other successors in title of B. to the lands contiguous to said canal owned or had property rights, created by grant directly made by or necessarily implied in said statutes of 1809 and 1850 in:

(a) The maintenance of the dam at the crest elevation of seven and one-half feet.

(b) The maintenance of the canal and locks for the purpose of improving the navigation of the river and conveying water from the pool of the dam for power purposes.

(c) To the use of the waters in excess of twenty cubic feet per second during the navigation season, and

(d) To the use of the canal for the passage of boats to and from their respective industrial plants.

The particular rights of claimant were to the use of 103 cubic feet of the impounded waters per second, subject to the prior and superior rights of others to use in the aggregate 1,488 cubic feet per second, and the right to the use of 186 cubic feet of water per second, subject to the prior and superior rights to use in the

aggregate 2,600 cubic feet of water per second under a head at its mill of eight feet.

The acts of the state relating to and in connection with the construction of the Barge canal at the location in question diminished the fair market value of claimant's land and water rights, and claimant is entitled to an award of $28,000 with interest on specified amounts.

CLAIM for damages arising from construction of Barge canal.

*Nortrup R. Holmes,* for claimant.

*Carl Sherman,* attorney-general (*E. J. Mone,* deputy attorney-general, of counsel), for State of New York.

FREDERICK COLLIN, Official Referee. The action is upon two several claims. Each claim is based upon the acts of the state relating to the construction of the Barge canal at Baldwinsville and vicinity. The defendant does not interpose the question concerning the jurisdiction of the court to hear and determine upon the merits, in the action, items or elements of claims embraced in the two claims, whether they be considered as claims for appropriations or claims for damages for the invasion of property rights. For the purposes of the decision the claims can be treated as a single claim. The cardinal facts are:

Plaintiff was, on June 4, 1908, and since 1892, and is the owner in fee simple of lands and structures at Baldwinsville, lying between the Seneca river on their southern side and the " Baldwinsville canal " on their northern side, and constituting a plant for manufacturing flour. Whether or not it owned the contiguous bed of the river to its center I do not decide, because, in my opinion, the rights involved in this action relate only to the acts of the state affecting the flowage of the waters and their uses; there is no dispute involving the ownership of the river bed. The Seneca river is a continuous, fresh water, non-tidal stream, carrying the overflow waters of Seneca and Cayuga lakes to the Oswego river. In its natural condition it was sufficiently navigable and sufficiently navigated to give it the character of a natural public highway, notwithstanding interruption of its navigability at places by rapids or obstructions. It was navigable in fact. In order to be navigable, it is not necessary that it should be deep enough or of a nature to admit the passage of boats or other craft at all its parts, nor need the navigation be open at all seasons of the year or at all stages of the water. *Waterloo Woolen Manufacturing Co.* v. *State of New York,* 118 Misc. Rep. 516, 523; *Waterford Electric Light, Heat & Power Co.* v. *State of New York,* 117 id. 480, 492; *Economy Light & Power Co.* v. *United States,* 256 U. S. 113; *United States* v. *Cress,* 243 id. 316, 321; *Danes* v. *State of New York,* 219 N. Y. 67,

71. The public highway character of such watercourse has been recognized and confirmed, though not originally created, by various acts of the state legislature. See Laws of 1813 (2 Van Ness & Woodworth's Rev. Laws, p. 285), chap. 47, § 1. At common law, as well as by statute, it was a public highway subject to the right, common to all, of navigation, a right not affected by the location of the title to its bed, whether in the state or private owner.

The premises of plaintiff were reached by a swing bridge over the " Baldwinsville canal." Appurtenant to them and within plaintiff's ownership (in addition to the ordinary riparian rights incident to them) was the granted right to draw, have and use from the waters within the " Baldwinsville canal " 289 cubic feet of water per second, subject to the prior and superior rights hereinafter stated.

The waters of the " Baldwinsville canal " came from the waters of Seneca river impounded by a dam known as the " Baldwinsville dam," located about 1,800 feet westerly of plaintiff's premises. The dam and the canal were, in their original condition, constructed about 1810–1813, in virtue of and in accordance with legislative consent and empowerment to Jonas C. Baldwin, who, in and prior to 1809, was the owner in fee of the lands on each side of the river at the places and in the locality of the dam and canal. Inasmuch as the river was navigable, legislative consent was essential to their construction (*People ex rel. N. Y., Ont. & Western Ry. Co.* v. *State Tax Commission*, 116 Misc. Rep. 774), and was given in " An act to authorize Jonas C. Baldwin to erect a dam across the Seneca river," being chapter 54 of the Laws of 1809. It declared that Jonas C. Baldwin, his heirs or assigns, might erect and maintain a " dam across the Seneca river, at the head of the rapids commonly called McHarry's rift, of such height as shall be necessary for improving the navigation of said river, not exceeding seven and one-half feet on the rapids above said dam: Provided always, and upon this express condition " that not less than thirty feet of the dam shall be so constructed as " to admit the passage of rafts and boats down " the river; " And provided also, That the said Jonas C. Baldwin, his heirs and assigns, shall erect and maintain a canal and lock for the passage of the largest boats usually employed in said river from above said dam, to the stillwater, two feet deep, below the same, said canal and lock to be at least twelve feet wide, and said lock to be at least seventy-seven and a half feet long within the gates, and with a sufficient depth of water to pass boats, drawing two feet of water, when loaded * * *." The statute authorized Baldwin, his heirs and assigns, to exercise eminent domain; and to demand and receive tolls for

passage through the canal. It was further provided: "That it shall and may be lawful for the said Jonas C. Baldwin, his heirs and assigns, to take and make use of the water in said dam for the use of mills and hydraulic works, or to any other use to which the same is capable of being applied upon land owned by him, his heirs or assigns * * *;" and that the privileges and advantages thus granted should continue for twenty years and no longer. Subsequent statutes continued such privileges and advantages in force until the acquisition by the state of New York, under chapter 153 of the Laws of 1850, of the dam, locks and canal constructed pursuant to the act.

At the time of the passage of the act of 1809, Jonas C. Baldwin was the owner of riparian rights appurtenant to his uplands. The state possessed the rights inherent in its sovereignty. It is unnecessary to determine the precise nature and extent of the original respective rights of Baldwin and the state in Seneca river at the *locus in quo* prior to the act of 1809, because those rights were superseded by the act which constituted a contract between the two parties by virtue of Baldwin's acceptance of the act and his compliance therewith. *Oswego & Syracuse Railroad* v. *State,* 226 N. Y. 351; *Lehigh Valley Railroad Co.* v. *Canal Board,* 204 id. 471; *United States* v. *Chandler-Dunbar Co.,* 229 U. S. 53. It is evident, on the face of the act, that Baldwin's compliance therewith was intended to and did constitute an improvement of the navigability of the river. No question, therefore, can be or is raised as to the validity of the act on constitutional or other grounds as constituting any impairment of the public easement of navigation.

It is well established in this country that the legislature of the state may, as the representative of the people, grant the soil of or confer an exclusive privilege in navigable rivers or waters held by it for the people, or authorize a use inconsistent with the public right, or interfere with the rights of navigation, so far as the public is concerned, *when acting in the public interest,* subject to the superior control of the federal congress. *People* v. *New York & Staten Island Ferry Co.,* 68 N. Y. 71; *Saunders* v. *New York Central & H. R. R. R. Co.,* 144 id. 75; *Shively* v. *Bowlby,* 152 U. S. 1, 48–50; *Barney* v. *Keokuk,* 94 id. 324; *Langdon* v. *Mayor, etc., of City of New York,* 93 N. Y. 128, 129, 154. Whether a grant or privilege is in the public interests is for the sole determination of the legislature.

I now return to the conditions existing on June 4, 1908. Through the locality in question the Seneca river flows in an easterly direction.

The "Baldwinsville canal" extended from a point in the northern bank of the river a short distance west of or above said "Baldwinsville dam," or in its pool, easterly through the upland along the

northern side of the river, and to a point therein about 2,500 feet, or about six-tenths of a mile east of and below the dam. Consequently a strip of land of substantial width and of the length stated was between the river and canal; upon which strip and in its lower or eastern part are plaintiff's premises. A lift lock was located at the eastern end of the canal to pass craft to and from the river. At the westerly end of the canal was a guard gate usable, when necessary, for the purpose of preventing the flowing into it of water in such quantity as to overflow its banks. At the western end of the said strip of land and at or contiguous to the northern end of the dam a raceway conducted water from the pool of the dam to the plant of the Seneca River Power Company, which was returned by the tail race of the company to the river; between such head raceway and the western end of the canal was a raceway, known as the "Amos race," for the purpose of conducting from the impounded waters for power purposes, water which was discharged into the river.

From the pool of the dam, easterly through the upland along the southern side of the river to a point at or near the westerly line of Syracuse street in the village of Baldwinsville, extended a hydraulic race or canal, known as the "South Hydraulic race" or "South Hydraulic canal," for the purpose of conducting water from the pool of the dam for power or other purposes.

Subsequent to February 24, 1809, when chapter 54 of the Laws of 1809 took effect, Jonas C. Baldwin, or his successors in title, conveyed with lands at least seventeen separate and successive rights in and to the use of waters impounded by the dam. The exercise of each right was subject and subsequent to the requirements of all the rights prior in date. The plaintiff's rights were: (1) The eleventh right in order of priority, which was originally created and granted in a deed dated January 27, 1826, and entitled its owner to the use, subject to the prior and superior rights, of 103 cubic feet of water per second under a head of 8 feet; (2) four-fifths of the sixteenth right in order of priority, which was originally created and granted in a deed dated August 12, 1862, and entitled the owner of the four-fifths to the use, subject to the prior and superior rights, of 186 cubic feet of water under a head of 8 feet.

In 1850 the state of New York, pursuant to and by virtue of chapter 153 of the Laws of 1850, in the exercise of eminent domain, took possession of and acquired in fee ownership the "Baldwinsville dam," the "Baldwinsville canal" and locks, and "so much of the water of said river as shall be necessary for such purpose (*of improving the navigation of said river, and the locks and canal to be maintained at the same place*) and no more." The act provides,

in effect: The canal commissioners shall cause the navigation of Seneca river to be extended and maintained from where the navigation ceases, below the canal and lock, to deep and navigable water, in the pond created by the dam, and to be suitable to boats " now used in navigating the Oswego canal; " the dam, locks and canal shall be taken possession of within the three months from the passage of the act, in the exercise of eminent domain, compensation being made to the owners of the dam, canal and locks, and to those having " any claim against the state for damages for land flowed by water, or water to be appropriated to the public use for the purposes contemplated by this act; " the rates of toll for transportation upon the canal shall be fixed by the canal board, " and such tolls shall be charged upon so much of said river as shall be made navigable by said dam and canal around the same; " the dam then existing, or thereafter to be erected, may be maintained at the permissible height of the dam authorized by chapter 54 of the Laws of 1809, and no higher.

Section 8 (Laws of 1850, chap. 153) is: " The canal commissioners shall maintain the said dam across the Seneca river at Baldwinsville, for the purpose of improving the navigation of said river, and the locks and canal to be maintained at the same place, and for that purpose shall appropriate and use so much of the water of said river as shall be necessary for such purpose, and no more, and they shall permit the surplus water, if any, to be drawn from said dam and canal for hydraulic purposes, in such manner as they shall prescribe, and all repairs to said dam necessary for hydraulic purposes shall be made by the owners of water rights, and all gates, weirs, raceways and conduits constructed for the purpose of drawing water from said dam or canal, shall be made under the direction of the acting canal commissioner, at the expense of the party using the same."

Section 11 is: " The act entitled ' An act to authorize Jonas C. Baldwin to erect a dam across the Seneca river,' passed February twenty-fourth, eighteen hundred and nine, and the several acts continuing the said act in force, or amending the same, are hereby continued in force until the state acquires title to all the rights of Harvey Baldwin and the representatives of Stephen W. Baldwin in and to said dam, locks and canal."

Manifestly the state desired and intended to acquire the ownership of the dam, canal and locks and all of the existing means necessary for the purposes of navigation, and the entire and absolute right to the use of the impounded waters in so far as the operation of the canal and locks required.

The provisions of the act were complied with. The purpose stated in section 8 (Laws of 1850, chap. 153) of the act required, as the evi-

dence proved, the use of 20 cubic feet of water per second, during navigation season; the right of such use became prior and superior to all other rights to the use of the impounded waters; the use of the excess of those waters subject to lawful prescription by the canal authorities of the manner of their drawing, remained the right of the successors in the title of Jonas C. Baldwin. The plaintiff's rights were: To the use of 103 cubic feet of water per second, subject to the prior and superior rights to use, in the aggregate, 1,488 cubic feet per second, and to the use of 186 cubic feet of water per second, subject to the prior and superior rights to use, in the aggregate, 2,600 cubic feet of water per second, under a head, at its mill, of 8 feet.

From the stated facts it follows: At the time of the appropriation by the state, for Barge canal purposes, on June 4, 1908, the defendant, state, owned in fee the dam, the canal and locks, the right to maintain the dam at the crest height of seven and one-half feet and not higher, and the first and superior right to appropriate and use twenty cubic feet of the impounded waters for the canal and locks and navigation within them. The plaintiff and the other successors in title of Jonas C. Baldwin to the lands contiguous to the " Baldwinsville canal," owned or had property rights in the (a) maintenance of the dam at the crest elevation of seven and one-half feet; (b) maintenance of the canal and locks for the purpose of improving the navigation of the river, and conveying water from the pool of the dam for power purposes; (c) use of the waters in excess of twenty cubic feet per second during navigation season; (d) use of the canal for the passage of boats to and from their respective industrial plants.

Such rights were created by the grants directly made by or necessarily implied in the provisions of the legislative acts already referred to, namely, " An act to authorize Jonas C. Baldwin to erect a dam across the Seneca river," passed February 24, 1809, and " An act to improve the navigation of Seneca river at Baldwinsville in the county of Onondaga," being chapter 153 of the Laws of 1850, and the acts supplementary thereto or amendatory thereof, and the execution of those acts. The act of 1809 granted Jonas C. Baldwin and his heirs or assigns the right or privilege of taking the water constituting the pool of the dam for the canal and the use of it for power or hydraulic purposes. The improvement authorized by the act was a public work. *Calking* v. *Baldwin,* 4 Wend. 668. Private property rights in the flow of a navigable stream, superior to the right of the state in behalf of navigation, may exist by virtue of legislative grant or control. The decisions already cited authenticate such conclusion. The class of cases of which *United States* v. *Chandler-Dunbar Co., supra,* is one is

not applicable.   In the *Chandler-Dunbar* case the element of legislative grant to or contract with the private individual or owner was not involved, or, in the words of Mr. Justice Lurton, was " out of the way."   The right of the company, which was its cause of action, rested upon a mere license issued by the secretary of war, revocable at will.   " What it [the company] did was by the revocable permission of the secretary of war, and every such permit or license was revoked by the act of 1909."   The act of 1909 was not a revocable license; it was a grant and a contract.

The exercise by the state of eminent domain, pursuant to the act of 1850, did not, within legislative intendment, or in fact, appropriate or take unto the state the impounded waters or the use of them beyond the quantity or extent necessary to the operation of the canal and lock.   The titles to the use of the remaining part of the waters rested in the successors thereto of Jonas C. Baldwin.

Subsequent to and about June 4, 1908, the defendant, pursuant to the relevant statutes, entered upon the acts relating to and connected with the construction of the Barge canal at the locality involved in this action.   Therein it constructed the dam from the crest elevation of 372.28 to the crest elevation of 374 Barge canal datum; it deepened, straightened, widened and cleared in places, through the distance west of the dam to Seneca lake, and through a short distance east of the dam, the channel of Seneca river; it constructed the Barge canal through upland upon the southern side of the river and south of the " South Hydraulic canal," from a point within the pool of the dam easterly through the distance of about 1,800 feet to a point in the river.   A part of the construction was a guard gate at the westerly end, and a lock at the easterly end 345 feet long, 45 feet wide, with a lift of 11 feet, and operating accessories and appurtenances.   This lock is known as lock 24.   The operation of the lock, at its maximum capacity, and its accessories, requires not less than 135.7 cubic feet of water per second during navigation season.   It constructed at the western or entrance end of the former or " Baldwinsville canal " and the " Amos race " steel gates, intended and capable to control the flow into them of waters from the pool of the dam, and preventing the passage of boats or other craft at the western end of the canal into or from it; it constructed at the entrance to the forebay of the Seneca River Power Company, located at the north end of said dam, as already stated, a taintor gate intended and capable to control the flow of water into the head race of the company; it constructed in the northern extremity of the dam an automatic flood gate intended and capable to automatically,

under certain conditions, release the impounded waters into the river below the dam; it constructed at the head of the " South Hydraulic race " steel gates intended and capable to control the flow into the race; it constructed at Phœnix, across the Oswego river, into which the Seneca river flows, a permanent concrete dam having a crest elevation of 363 feet Barge canal datum, an increase of three feet, ten and one-half inches over the crest elevation of the prior dam, for which it was substituted, though located somewhat differently. It has constructed, as an element in the Barge canal system, in the Seneca river at Waterloo, intended and capable to control, as far as may be necessary for navigation, the flow of the waters of Seneca lake, six taintor gates, and in the foot of Cayuga lake, intended and capable to control, as far as may be necessary for navigation, the flow of waters of Cayuga lake, six taintor gates. Those gates are, in virtue of statutes, under the control of the superintendent of public works of the state, and the operating of them and the stated changes in Seneca river affects and will hereafter affect the natural and ordinary flow of the waters of each of those lakes and of Seneca river. The amount of water flowing from the lakes is not changed; the flow is regulated, during navigation season, as navigation requires or makes expedient.

The plaintiff claims and argues that property rights owned by it have been taken or damaged by the state through and because of those acts and their effects in these respects:

I. The state has taken, through complete obstruction, the right of transportation by water or boat between the pool of the dam and plaintiff's property and plant.

II. The state has taken, during the navigation season, from the owners entitled to the use of water from the waters impounded by the dam, including the plaintiff, the right to the use of (a) the waters flowing at the crest of the dam between the height of 372.28 feet and the height of 374 feet Barge canal datum; prior to the elevation of the crest and the operation of the Barge canal, the users of the water of the " Baldwinsville canal " for power purposes had the use of water when the surface of the river at the dam was at or above 372.28 feet Barge canal datum; thereafter the surface of the water must be at least at 374 feet Barge canal datum in order that they have the use of the water; and (b) 135.7 cubic feet of water per second essential to the operation of the lock 24 of the Barge canal and its accessories, and in addition the waters discharged by the operation of the automatic flood gate within the dam.

III. The state, by raising the crest of the Phœnix dam from

the elevation of 359.13 feet to that of 363 feet Barge canal datum has caused or increased the backwater at plaintiff's premises and water power wheels, and therein lessened the value of the property of the plaintiff.

IV. The state, through the means of the taintor gates at Waterloo and at the foot of Cayuga lake and the changes in the channel of the Seneca river, has taken unto itself the control of the flowage of Seneca river, has destroyed the natural storage of the waters within the lakes and the Montezuma marshes and flow of the waters of the lakes and river; because thereof, while the total annual amount of water flowing at the dam may not be materially changed, the flow in high-water times is increased to the extent that at times the water is on the basement floor of plaintiff's mill, and in low-water times is diminished, and the value of the property of plaintiff is thereby diminished.

Concerning " I." Obviously, as it seems to me, the state, by placing the steel guard gate at the western entrance of the old or " Baldwinsville canal," has appropriated the right of plaintiff to boat transportation between the pool of the dam and its plant. The facts that chapter 153 of the Laws of 1850 is in force and the reciprocal rights and obligations thereunder still exist, and the state has barred the western entrance, compel an award of compensation to the plaintiff. The authority or power of the state under the statute to regulate the manner in which the canal shall be used and the surplus waters drawn into it is not the authority to destroy the canal or its use or the flowing of the surplus waters into it.

Concerning "II." (a) The state, since the operation of the Barge canal, so regulates, during navigation seasons, the flow from the pool of the dam that the owners of water rights therein have not, during navigation season, the use of any water therefrom unless the surface of the pool is at or above the crest of the dam, that is, at 374 feet Barge canal datum. In virtue of the appropriations exercised by the state in virtue of chapter 153 of the Laws of 1850, it rightfully so regulated the flow from the pool that those owners had not, during the navigation season, the use of any water therefrom unless its surface was at or above the crest of the dam, that is, at 372.28 feet Barge canal datum. The right of the property owners under the last stated condition is different and substantially more ample than their right under the first stated condition. While raising the crest of the dam increases the " pondage " capacity of the dam, and the power working head at the dam, when the water is flowing over the crest, the increase during the navigation season, in which the low-water condition

occurs, is for the benefit of the Barge canal and a withholding of water from the water power owners. Not infrequently, during the season of navigation, does it occur that for long periods of time the impounded waters have not supplied and do not supply the needs of those entitled to their use. Because the state had the right for the purposes of the old canal to maintain the water at the crest of the dam at 372.28 feet, it does not follow, and it is not true, that it has the right to maintain it at 374 feet for the Barge canal. The retention of the water, during the navigation season, for the purpose of continuing the navigation through the upland, takes from and injures the rights of the plaintiff. The diminution in the right lessens the value of its premises, is a taking, and entitled it to commensurate compensation.

(b) I do not deduct the quantity of water used for the operation of the old or " Baldwinsville canal," namely, twenty cubic feet per second, from the quantity required for the Barge canal. The state has not abandoned the old canal or the right to use so much of the impounded waters as shall be necessary for operating in navigation that canal and lock, and which remains appropriated alone to that canal and lock. An abandonment of that canal and lock (if permissible, without just compensation to the owners of the water rights, a question I do not consider) must be effected, not by a judicial, but by a legislative declaration. *City of Mt. Vernon* v. *New York, N. H. & H. R. R. Co.*, 232 N. Y. 309.

The state had not the right, as the trustee of the public and dominant right of navigation and passage, to take the waters of the river for the purposes of continuing the canal or public navigation outside of the river and through the upland and not make compensation to those entitled to the use of the water and injured by its taking. *Fulton Light, Heat & Power Co.* v. *State*, 200 N. Y. 400, 418.

Inasmuch as the automatic flood gate opens or discharges only when the surface of the water at the dam is one foot or more above its crest, the particular waters discharged would have flowed and would flow over the crest of the dam and have no efficacy in producing power. Whatever effect those waters may have upon the height of the water at plaintiff's mill, under the conditions the " Baldwinsville canal " would not receive them.

Concerning " III." The state has, by the construction of the Phœnix dam, caused, or increased, at frequent times, backwater at plaintiff's premises and water wheels. The right of the plaintiff to have the water flow past and away from its premises and the tail race of its mill without an artificial obstruction which there increases the natural height of the water to an interference with the water

wheels or tail race, is an inseparable part of plaintiff's land, and an artificial obstruction which destroyed, in whole or in part, the water power, is a taking of a part of the land. By the same rule, the artificial obstruction of the natural flow of the river which at times hinders the escape of the water from the water wheels (although it does not destroy the water power) and causes inconvenience and a diminution of power, is an injurious infraction of the right of the plaintiff. The state is, therefore, liable in compensatory damages. *United States* v. *Cress, supra.* It is, therefore, in the case at bar, liable in damages or compensation.

Concerning " IV." The right of the plaintiff in regard to the flow of the river was of a dual character. It was constituted of the (a) granted rights to the use of the 289 cubic feet per second of water drawn from the " Baldwinsville canal," in the manner and subject to the conditions already stated, and (b) the ordinary riparian rights incident to the ownership of the land bordering on the river. The fact that the land bordered upon the canal created no right to the plaintiff, as a riparian owner, to the use of the water of the canal as power. *Fox River Flour & Paper Co.* v. *Kelley,* 70 Wis. 287; *Stebbins* v. *Frisbie & Stansfield Knitting Co.*, 201 App. Div. 477; *Finn* v. *Providence Gas & Water Co.*, 99 Penn. St. 631. The taintor gates and the changes in the channel of Seneca river could not injuriously affect the *granted rights* of the plaintiff to the use of the water of the canal for power purposes. The steel gates at the entrance to the canal prevent the water of the river from overflowing the banks of the canal; the water within its banks does not flood nor produce backwater at the plaintiff's mill or the wheels or tail race of it. The taintor gates and the changes in the channel of the river do not increase the scarcity of water, because it is the duty and design of the state to maintain, during the navigation season, the surface of the impounded waters at the crest of the dam or at 374 feet, instead of at 372.28 feet, Barge canal datum. It should be borne in mind that the taintor gates could, in virtue of the statute authorizing them, lawfully be used solely " for controlling the waters of Cayuga and Seneca lakes so far as may be necessary for navigation." Plaintiff, in its *granted rights* to the use of water, is not injured by the control or regulation of the flowage by the taintor gates.

The plaintiff claims that it suffered in its riparian rights by reason of the state's interference, by means of the taintor gates and the changes in the channel of the river, with the natural flow of the waters of the river.

It is true that a riparian right of the plaintiff as the owner of the land contiguous to the river was to the natural flow of the

waters along the land. It is a general rule of the common law " that every proprietor of lands on the banks of a river has naturally, an equal right to the use of water which flows in the stream adjacent to his lands, as it was wont to run without diminution or alteration." The plaintiff, invoking such rule, asserts that " widening and deepening the channel of the Seneca river west " causes a greater volume of water to come down in times of high water and a less flow in times of low. I find the fact is as asserted.

The rule invoked by plaintiff is qualified, however, by the rule, equally elementary and unquestionable, that the state has the right to widen, deepen, clear, straighten and improve the channel of a navigable stream for the benefit of the public in facilitating navigation and transportation thereon. Riparian rights are subordinate to the public easement of passage. Riparian ownership is subject to the obligation to suffer the consequences of the improvement of the stream by the state for the betterment of navigability. The state may direct or perform those stated acts, or such other acts relating to the channel of the navigable stream as it deems expedient in the promotion of the public right of navigation without subjecting itself, in the absence of a wanton injury, carelessness, negligence or illegality in the performance, to liability. The ownership of the bed of the stream by the riparian owner does not affect the principle. *Fulton Light, Heat & Power Co.* v. *State, supra; Chase-Hibbard Milling Co.* v. *City of Elmira,* 207 id. 460; *Thompson* v. *State,* 204 App. Div. 684; *Stegmeier* v. *State,* 191 N. Y. Supp. 894; *Lehigh Valley Railroad Co.* v. *Canal Board,* 146 App. Div. 151, 160; mod., 204 N. Y. 471; *Huse* v. *Glover,* 119 U. S. 543; *United States* v. *Cress, supra.* The plaintiff had not any ownership or interest in the land upon which the taintor gates were placed.

The right of interfering with and making changes in the channel of a navigable stream is not peculiar to or an exclusive privilege of the state. It exists very broadly as to each riparian owner. He, too, may clear, straighten, deepen, widen or even change the location of the channel of the stream where it borders upon his upland. He may dam or dyke it; he may withdraw from it water for industrial purposes. In many ways he may change and interfere with its wonted flow.

The state has not, by any legislative grant or contract, abrogated or emasculated its right to make those changes in the channel of the Seneca river for the purpose of improving its navigability. Indisputably those changes were for that purpose. In engineering language, they canalized the river. They made the river itself a part of a great public highway or thoroughfare between the

Great Lakes and the Atlantic ocean. *Hinkley* v. *State*, 202 App. Div. 570; affd., 234 N. Y. 309. In so far as they tended to cause damages to plaintiff's mill by causing a great volume of water to come down in times of high water and a less flow in times of low water, they create no liability on the part of the state. The case is within the well-settled principle that consequential damages which result from a condition effected by the state in the fulfillment of its duty to the people or the public in a careful and skillful manner and without the direct invasion of a property right of the individual, are not recoverable. The acts of the state here are analogous to the grading or improving of a public highway by the proper authorities. They are acts done in the exercise of governmental power without directly invading or encroaching upon private property and are neither a trespass nor a taking within the meaning of the constitutional provision. They are squarely within the principle: "Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the state or its agents or give any right of action." *Sauer* v. *City of New York*, 180 N. Y. 27, 33. The acts are within the rule of *damnum absque injuria.*

In regard to the taintor gates, I find as a fact that the use of them for the controlling of the waters of the lakes so far as may be necessary for navigation, has no injurious results to the rights of the plaintiff. They do not accumulate an unnatural and large mass of waters which they release in such quantities as change the surface of the river at plaintiff's mill. They tend to lessen scarcity of water by increasing the storage of and releasing water for use in periods of low water. They do not increase the waste or flowing away of water by casting into the river water which the power owners cannot use, because it flows over the crest of the dam or through the automatic discharge gates.

As a matter of law, maintaining by the controlling gates ample water levels for the uses of navigation and the canal in the river connected with the lakes and channels of the lakes, is a proper governmental function. *United States* v. *Chandler-Dunbar Co., supra.*

Expert witnesses for the one party or the other have given by far the greater part of the evidence. As to nearly all cardinal facts, the testimony of those for the one party is in severe conflict with or direct contradiction of the testimony of those for the other. Because thereof, and further, because of the general or theoretical character of portions of the evidence, it has been difficult, and, in

certain respects, impossible to reach precise and definite conclusions of findings. In the matter of damages the evidence of the one party is as antipodal to that of the other as midnight is to midday. I have studied the comprehensive and thorough briefs of counsel and all the evidence which could aid in arriving at a just determination of the questions involved, and have applied the results of my inspection of the premises and physical conditions at the *locus in quo*.

I decide: The state of New York, in and through the destruction and taking of the plaintiff's right of transportation, by means of the " Baldwinsville canal " and boat, between the pool of the dam and the land and premises of the plaintiff, has diminished the fair market value of the land and premises in the sum of $5,000.

By reason of the increase in backwater or in the height of the water, at times, at plaintiff's premises and mill, resulting from the acts of the state in the elevation of the crest of the dam at Phœnix and in the construction and operation of the Barge canal, the fair market value of the said lands and premises has been diminished in the sum of $6,000.

The state of New York, by means of the elevation of the crest of the " Baldwinsville dam," the steel gates at the western entrance to the " Baldwinsville canal," the steel gates at the western entrance to the "Amos raceway," the steel gates at the intake of the Seneca River Power Company, and all changes effected in the said dam and accessories by the construction and operation of the Barge canal, and by the means, further, of using from the pool of the said dam, for the operation of the Barge canal and said lock " 24," a quantity of water largely exceeding the quantity required and used in the operation of the " Baldwinsville canal," has taken a valuable part of the right of the plaintiff to the use of the waters impounded by said dam as that right existed at the time the state began the construction of the Barge canal, and therein and thereby has diminished the fair market value of said lands and premises in the sum of $17,000.

The plaintiff is entitled to an award and judgment in its favor in the aggregate sum of $28,000, with interest on $5,000 thereof from August 1, 1910, at which time the steel gates to the entrance from the pool of the dam to the canal were in place, to the entry of judgment; on $6,000 thereof from August 1, 1912, the date of the completion of the Phœnix dam, to the entry of judgment; and on $17,000 thereof from January 1, 1916, the date of the first operation of the Barge canal, to the entry of judgment.

Judgment accordingly.