NATIONAL CELLULOSE CORPORATION, Appellant and Respondent, v. STATE OF NEW YORK, Respondent and Appellant. (Claim No. 22256.)

Argued November 30, 1943; decided April 20, 1944.

*Louis L. Waters* and *Frank J. Cregg, Jr.,* for claimant, appellant and respondent. I. If there was evidence to support each finding made by the Official Referee, the court will not disturb his decision on appeal. (*Aldridge* v. *Aldridge,* 120 N. Y. 614; *Carpenter* v. *Mosher,* 125 N. Y. 736; *Baird* v. *Mayor, etc., of City of N. Y.,* 96 N. Y. 567; *Aerated Products Co.* v. *Godfrey,* 290 N. Y. 92; *People ex rel. MacCracken* v. *Miller,* 291 N. Y. 55.) II. The declared policy and intent of the State of New York has always fully recognized that in the construction and operation of the Barge Canal injuries to waterpower and riparian owners would result, and that the State would prevent such injuries as far as possible, and that the State would compensate the property owners for such injuries so occasioned, whether or not such damages were occasioned by the acts of the

State in the exercise of its governmental functions and whether or not such damages were *damnum absque injuria.* (*Oswego & Syracuse R. R. Co.* v. *State,* 226 N. Y. 351.) III. The injuries complained of and proved were injuries caused by the construction and operation of the Barge Canal, and were in large part new damages occasioned by the acts of the State in Barge Canal operation in 1930 and 1931, and in part continuing trespasses and injuries resulting from prior construction and operation of the Canal as to which new causes of action against the State and in favor of claimant arose every day including all days of the canal seasons of the years 1930 and 1931. (*Silsby Mfg. Co.* v. *State of New York,* 104 N. Y. 562.) IV. The State has given no evidence as to the value of claimant's plant or water rights before and after the acts complained of. The evidence is that that value was diminished by those acts between January 1, 1930 and December 31, 1931, in the sum of $55,000. (*Heiman* v. *Bishop,* 272 N. Y. 83; *Colrick* v. *Swinburne,* 105 N. Y. 503; *Reisert* v. *City of New York,* 174 N. Y. 196; *Kinsey* v. *City of New York,* 75 App. Div. 262; *Ford* v. *State of New York,* 119 Misc. 484; *Baumann* v. *City of New York,* 227 N. Y. 25; *Hall Sons' Co.* v. *Sundstrom & Stratton Co.,* 138 App. Div. 548, 204 N. Y. 660; *N. Y. R. Co.* v. *Rothery et al.,* 132 N. Y. 293; *Gallagher* v. *Kingston Water Co.,* 25 App. Div. 82; *Neal* v. *City of Rochester,* 156 N. Y. 213.) V. On the undisputed evidence the value of claimant's property and water rights has been impaired and diminished by the acts of the State in the construction and operation of the Barge Canal during the years 1930 and 1931. VI. The release to the State executed by a predecessor in title of claimant was not a release of claims for damages to water rights, either by the releasor or by any successor in title. VII. The State has overlooked the provisions of the enabling act, chapter 630 of the Laws of 1921, one of the enabling acts under which the claim of claimants was filed. VIII. Appellant's attack upon the order amending the claim, in Point VI, is neither justified in fact or in law. (*Al Raschid* v. *News Syndicate Co.,* 265 N. Y. 1; *Foster* v. *Central Nat. Bank,* 183 N. Y. 379; *Harriss* v. *Tams,* 258 N. Y. 229.)

*Nathaniel L. Goldstein, Attorney-General* (*Herman F. Nehlsen* and *Orrin G. Judd* of counsel), for defendant, respondent

and appellant. I. The reservation by a predecessor in title of the present claimant of all claims for damages resulting from the construction and operation of the Barge Canal, followed by the judgment and satisfaction thereof in an action against the State by said predecessor in title and the release executed by her are a bar to a recovery of damages in this action. (*Drucker* v. *Manhattan Railway Co.*, 213 N. Y. 543; *Shepard* v. *Manhattan Railway Co.*, 169 N. Y. 160; *Oehler* v. *New York Elevated R. R. Co.*, 4 App. Div. 152.) II. The State being free from negligence in the operation of the Barge Canal, it is not liable for damages thereby suffered by riparian owners. (*Bonnell* v. *Griswold*, 89 N. Y. 122; *Wahl et al.* v. *Barnum et al.*, 116 N. Y. 87; *Kelly* v. *Leggett*, 122 N. Y. 633; *Israel* v. *Manhattan Railway Co.*, 158 N. Y. 624; *Williams* v. *State of New York*, 106 Misc. 19; *Gordon* v. *Ellenville & Kingston R. R. Co.*, 195 N. Y. 137.) III. The Appellate Division erred in ruling that the State had deprived claimant of water at a time when it would have been available at a lower datum. (*Frazee Milling Co.* v. *State of New York*, 122 Misc. 545; *Sage* v. *The Mayor*, 154 N. Y. 61; *Little Falls Fibre Co.* v. *Ford & Son, Inc.*, 249 N. Y. 495; *Matter of City of New York* [*Jamaica Bay*], 256 N. Y. 382; *People* v. *N. Y. and S. I. F. Co.*, 68 N. Y. 71.) IV. Lay testimony of witnesses who have seen and observed conditions to which they testify is entitled to greater credence and weight than mere opinion evidence. (*Daly* v. *State of New York*, 238 App. Div. 253; *Roberts* v. *Jones*, 156 Mo. App. 552; *Ladwig* v. *Jefferson Ice Co.*, 141 Wis. 191; *Cincinnati, etc., R. Co.* v. *Webber*, 178 Ky. 171.) V. It was error to admit proof of damages accruing after the effective date of the enabling act of 1931. (*Stone et al.* v. *State*, 138 N. Y. 124; *Farrington* v. *State*, 248 N. Y. 112; *Smith* v. *State of New York*, 227 N. Y. 405; *Mowers* v. *State of New York*, 168 Misc. 651; *Throckmorton* v. *State of New York*, 128 Misc. 599.) VI. It was error to allow respondent to amend its claim by substituting a different parcel of land nine years after the time to file had expired. (*Coleman* v. *Manhattan Beach Im. Co. et al.*, 94 N. Y. 229; *Jones et al.* v. *Smith*, 73 N. Y. 205; *Thayer* v. *Finton*, 108 N. Y. 394; *Slocum* v. *State of New York*, 177 Misc. 114; *Quimby* v. *Cluflin*, 27 Hun 611; *Buckles* v. *State of New York*, 221 N. Y. 418; *Clark* v. *Post et al.*, 113 N. Y. 17; *Rafferty* v. *State of New*

*York,* 172 Misc. 870; *Cognetta* v. *State of New York,* 111 Misc. 329; *Empire State Railroad Corp.* v. *State of N. Y.,* 113 Misc. 238; *Konner* v. *State,* 180 App. Div. 837, 227 N. Y. 478.)

RIPPEY, J. The National Cellulose Corporation acquired between 1925 and 1929, inclusive, by various conveyances, in fee simple, and has since been the owner in possession of, a valuable water power and factory site on the southerly side of the Seneca River in Baldwinsville, near what is known as the "Baldwinsville Dam," "together with water power and privileges thereunto belonging" and riparian rights appurtenant thereto, and was engaged in the manufacture of paper products in a mill and other buildings located on said property with necessary machinery and equipment and a productive capacity of 13,000 pounds of paper per day. It has been found by the courts below that it owned a one-fifth right among other property owners to take water for its purposes from the pool in the river above the Baldwinsville Dam amounting to four hundred and fifty cubic feet per second under an eight-foot head subject only to the superior right of the State to take for navigation purposes during navigation seasons twenty cubic feet per second and four other property owners to take six hundred thirty-one cubic feet per second from the impounded waters. The property had been used by claimant's predecessors in title for the same purpose and under similar conditions as to the use of water power for more than fifty years before the State began the construction of the Barge Canal.

This claim was filed on March 21, 1932, within the time specified by the Legislature under enabling acts (L. 1921, ch. 630 and L. 1931, ch. 693) upon the authority of chapter 147 of the Laws of 1903 (commonly known as the Barge Canal Act), to recover damages for interference with and appropriation of the property rights of claimant by the State and embraced all damages sustained from the date of its acquisition of title to the date of filing the claim. The claim was referred for hearing and determination to Honorable FRANK H. HISCOCK, an Official Referee of this court. During the hearing, upon application of the State, the claim was limited and amended to include only damages suffered by claimant through injury to its property and riparian rights during the years 1930 and 1931. There has been

no issue raised by claimant as to the propriety of the amendment. The learned Referee, after extended hearings and exhaustive examination into the facts and the applicable law, made findings of fact and concluded that claimant was entitled to damages in the sum of $55,000, the amount of the claim as amended, with interest, and judgment for that sum was accordingly entered in favor of claimant. The basic findings upon which the award was necessarily made were unanimously affirmed by the Appellate Division. The latter court modified the award, however, by a reduction of the loss to $22,000 and interest, on the theory apparently that the claimant was entitled to recover only the usable value of the water of which the claimant was deprived during the years in question rather than the reduction in the market value of claimant's water rights by appropriation by the State during those years. A review of facts, similar to those found in the case at bar, down to 1924 as to the reciprocal rights and obligations of the State and other property owners and claimant's predecessors in title to power rights in the waters of the Seneca River and the applicable law is covered in detail in the case of *Frazee Milling Co.* v. *State of New York* (122 Misc. 545) and we shall refer here only to so much of the approved findings of the Referee as we deem necessary to our decision.

By chapter 54 of the Laws of 1809, the State authorized the construction by Jonas C. Baldwin, his heirs and assigns, of what is known as the Baldwinsville Dam, in the Seneca River, a navigable stream, at Baldwinsville, N. Y., of such a height as might be necessary for improving the navigation of the river but " not exceeding seven and an half feet on the rapids above said dam," with the right " to take and make use of the water in said dam for the use of mills and hydraulic works, or to any other use to which the same is capable of being applied upon land owned by him, his heirs or assigns ", for a period of twenty years, which term was extended by later statutes. Baldwin was then the owner of riparian rights appurtenant to the lands he owned adjoining the river. Conditional upon the grant was a construction by Baldwin of an apron of an even ascent from the bottom of the river to the top of the lowest part of the dam, not exceeding a twelve and a half degree elevation, to

permit the passage of rafts and boats down and fish up the river and Baldwin was required to construct and maintain a canal and lock through his own land to the north of and parallel with the river of specified dimensions to enable larger boats to pass up and down the river by the dam. Baldwin built the canal, lock, guard gate and necessary appurtenances and the dam and complied with all the conditions imposed by the State by the Act of 1809 contingent upon the grant of the water rights above-mentioned, operated the canal and exercised the rights granted by the State. The Act of 1809 was for the improvement of navigation and constituted a contract between the State and Baldwin and his grantees by virtue of Baldwin's acceptance of the Act and his compliance therewith in the construction and maintenance of the canal and the Baldwinsville Dam, a contract which was within the power of the State to make.

The grant to Baldwin of water rights and privileges of the use of the waters of Seneca River was continued undisturbed and all conditions of the grant were performed by Baldwin and his heirs and assigns until 1850 when, by chapter 153 of the laws of that year, the State acquired the dam, locks and canal theretofore constructed by Baldwin in the exercise of the power of eminent domain, took possession of the dam and acquired so much of the waters of the river as should be necessary for the purpose of improving the navigation of the river and the operation of the locks and canal to be maintained at the same place *and no more* (§ 8). The Canal Commissioners were directed to maintain the dam at Baldwinsville for the purpose of improving the navigation of the Seneca River and to appropriate only so much of the water of the river as was necessary to operate the canal and to permit the surplus water, if any, to be drawn from said dam and canal for hydraulic purposes. The provisions of the 1809 Act relating to the grant of property rights to Baldwin and his heirs and assigns were continued in full force and effect until the State should acquire title to all the rights of Harvey Baldwin and the representatives of Stephen W. Baldwin, who had succeeded to the title of Jonas Baldwin, their father, in 1819, in and to said dam, locks and canal (§ 11). The river was thereupon further canalized by the State, the dam was rebuilt at an elevation of

372.28 feet later Barge Canal datum and various improvements were made in the Baldwinsville Canal. In the interest of navigation, the State required an average water flow of twenty cubic feet of water per second at a head of seven and one half feet *and no more*.

Under chapter 147 of the Laws of 1903, it was provided that the Barge Canal should, in part, be located in the Seneca River and involved reconstruction of the Baldwinsville Dam and construction of locks and other accessories in that location for the convenience of navigation. The State engineer was authorized to enter upon, take possession of and use lands, structures and waters, the appropriation of which for the use of the improved canals and for the purposes of the work and improvement authorized by that Act should in his judgment be necessary, and the Court of Claims was given "jurisdiction to determine the amount of compensation for lands, structures and waters so appropriated." Thus the State waived any claim that it might appropriate or interfere with the use of the waters of Seneca River for the necessity of navigation as against the contractual rights of Baldwin and his heirs and grantees without due compensation to the owners thereof (*Oswego & Syracuse R. R. Co.* v. *State,* 226 N. Y. 351). It was found by the Referee, upon documentary and other evidence, which finding was approved by the Appellate Division, that one of the purposes of the State in connection with the construction of the Barge Canal was to preserve the rights of power users so far as was consistent with the public interest.

In the course of the building of the Barge Canal under the Act of 1903 and supplementary and amendatory acts, the State, among other things, rebuilt the Baldwinsville Dam and raised its crest from 372.28 to 374 feet Barge Canal datum, constructed a new canal parallel with the river to the south of the property later acquired by claimant and therein constructed a lock which, with uncompensated leakages and necessary use of water for its operation took from the pool above the dam far in excess of twenty cubic feet per second during every day of the navigable seasons, made numerous changes in the control of the normal flow of water from the watershed above the pool and interfered with normal flow of water from feeders of the river and compelled power users to shut down their plants when the water

in the pool fell one-tenth of a foot below the crest of the dam and made numerous other changes which interfered with and diminished the water rights which claimant had secured by grant from the assigns and successors of Baldwin. The State thereby appropriated, as the Referee correctly found and the Appellate Division affirmed, during September to December in the years 1930 and 1931 a considerable and valuable right of claimant to the use of waters impounded by the dam as that right existed at the time the State began the construction of the Barge Canal for which no compensation had been made to claimant or to its predecessors in title at any time. In 1930, there were one hundred and nineteen days and in 1931, there were one hundred and twenty-three days during which there was not enough water flowing over and above the dam elevation of 374 feet Barge Canal datum to satisfy the requirements of the owners of the five water rights although, during those periods, there was sufficient water flowing in and out of the pool to satisfy those rights at the elevation of the old dam which was 372.28 Barge Canal datum. During those times, there was no water or insufficient water to operate the claimant's mill. Claimant's employees were rendered idle by lack of water to run the machinery. There was interference with claimant's contracts and claimant suffered loss of profits on business which it would otherwise have obtained. Other suitable power for the operation of machinery adapted to the use of water power could not be substituted for water power without a reconstruction of the plant. Although flash boards in the dam which would have neutralized to some extent, at least, the loss of water power were permissible in the discretion of the State, the use of such flash boards was prohibited.

The learned Referee pointed out the difficulty of determining with accuracy the damage incurred by claimant as a going concern through the appropriation and acts of the State above-enumerated. The Appellate Division were of the opinion that the correct rule of damages to be applied in the circumstances here was the usable value of the water of which the claimant was deprived during the periods when it was unable to operate, which was shown to be $22,000. That was one of the elements to be taken into consideration in fixing the amount of claimant's loss. It was not the only element. The effect of interference with the operation of claimant's business as a

going concern and with its production schedule, its loss of profits and the expenses necessarily incurred due to the shutdowns were other elements that were entitled to due consideration. Evidence was properly received as to the annual rental value of claimant's water rights of which it was deprived, the cost of necessary electric power to operate its mills to the full extent of its water rights as a substitute therefor, the usable value of the portion of claimant's water rights of which it was deprived during the period in question, the saving in cost to claimant by the use of water power as against the use of other power, if available, the fair and reasonable market value of the water rights of claimant before and after interference with and appropriation of those rights by the State in the years 1930 and 1931, and the cost of reconversion of the plant from one operated by water power to one operated by electricity. We think in circumstances such as exist in this case the damage fixing authority was authorized to take into consideration in fixing the amount of damages all testimony which was relevant as an aid to a determination of what constituted a just and equitable compensation to claimant for its loss through the interference with and appropriation by the State of its property rights and thereupon, in the exercise of its best judgment, to determine the amount of that loss. No fixed rule of damages, unvarying according to circumstances, is available. In principle, we have so held in other cases (*Heiman* v. *Bishop,* 272 N. Y. 83; *Matter of Board of Water Supply of New York,* 277 N. Y. 452).

The State argues that, in any event, damages may not be awarded which accrued after April 23, 1931, the effective date of the enabling Act of 1931. That position cannot be sustained in view of the fact that the claim in question was specifically filed not only under the enabling Act of 1931 but also under the enabling Act of 1921 which provided for the filing of claims for past or future damages within one year after such damages accrued, or, where such time had lapsed, within one year from the passage of the Act. The Act of 1931 is not, in effect, an amendment of the Act of 1921. It provides that, notwithstanding the lapse of time since the accruing of damages, a claim for damages theretofore suffered or caused as mentioned in the Act

of 1921 may be filed within one year from the passage of the Act. The claim for damages for the year 1930 was properly filed within one year after the passage of the Act of 1931. The claim for damages for the year 1931 was properly filed within one year after their accrual, in accordance with the provisions of the Act of 1921.

We have not overlooked other points raised by the State but we find no point of law which requires further consideration.

The judgment of the Appellate Division should be reversed and judgment of the Court of Claims entered on the decision of the Official Referee affirmed, with costs to the National Cellulose Corporation in this court and in the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Judgment accordingly.