SEYMOUR F. CLOUGH et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31269.)

Court of Claims, September 12, 1955.

*Vincent A. O'Neil* for claimants.

*Jacob K. Javits, Attorney-General (James G. Austin* of counsel), for defendant.

MAJOR, J. This claim is brought to recover compensation for the taking of water and water rights by the diversion of Onondaga Creek in the construction of a flood control project under chapter 862 of the Laws of 1936, as amended. This law is the State's authority to participate in a Federal program of flood control in the State (§ 1). It appropriates funds therefor (§ 3); authorizes and directs the Superintendent of Public Works to carry out such participation, including the compliance with the Acts of Congress applicable thereto (§ 5); directs the Superintendent of Public Works to acquire by appropriation any property or interest therein necessary for such purposes, and defines the term " property " as used in such act, as follows: " to include lands, waters, rights in lands or waters, * * * and interests in land, including * * * riparian rights, and any and all other things and rights usually included within the said term, and includes also any and all interests in such property less than full title, such as easements permanent or temporary, rights-of-way, uses, leases, licenses,'and all other incorporeal hereditaments and every estate, interest or right legal or equitable." (§ 7, subd. 1.)

The superintendent shall cause to be prepared a map and description of the property to be acquired, and when prepared it must be approved by him. (§ 7, subd. 2.) A copy thereof shall be delivered to the Attorney-General, who has the duty of certifying to the Superintendent of Public Works the names of the owners of property to be appropriated, and the superintendent shall then proceed with the appropriation (§ 7, subd. 7).

Under subdivision 12 of section 7, the Court of Claims has jurisdiction to hear and determine claims for the value of the property appropriated and for legal damages.

The flood control project was a joint venture in which the State of New York and the Federal Government participated.

There is no dispute between the parties as to the fact that the water was cut off from claimants' sand and gravel processing plant at a curve in the natural course of Onondaga Creek called the "Oxbow". The construction for the new course for the creek by-passed this "Oxbow" and deprived claimants of the use of such water at temporary intervals during such construction period.

No formal proceedings were taken to appropriate the interest of claimants in such waters. Formal proceedings are unnecessary for a determination that an appropriation has been made, either temporary or permanent. (*Weismantle* v. *State of New York*, 210 App. Div. 608; *American Woolen Co.* v. *State of New York*, 195 App. Div. 698; *Huey* v. *State of New York*, 170 Misc. 677; *Fulton Light, Heat & Power Co.* v. *State of New York*, 200 N. Y. 400.)

The State of New York contends that claimants have no legal interest in such waters, or in the use thereof, asserting the defense of the Statute of Frauds. The State was not a party to any of the agreements by virtue of which claimants occupied the sand and gravel premises and by which they had authority to use and acquire an interest in the waters of Onondaga Creek, and cannot, therefore, rely on such defense. (*Folinsbee* v. *Sawyer*, 157 N. Y. 196; *Adler* v. *Pilot Industries*, 57 N. Y. S. 2d 539; *People* v. *Fahrenkopf*, 254 App. Div. 397.)

In any event, claimants occupied the premises, carried on the sand and gravel business, and used the waters of Onondaga Creek in the processes of their business, under one name or another, over a long period of years. The claimants processed and sold the products and paid a cubic yard rate to the owners, persons or corporation entitled thereto under the agreements. These payments were always accepted at the agreed rate. At times technical or precise language was not used, but the parties

appeared to understand the agreements without dispute. Granting that lessors or grantors at one time might have had a misunderstanding as to who had authority to lease the premises, nevertheless, in dealing with claimants, the family connections, interlocked directorates and corporate officers of the lessors, the decision always rested in the same persons in their dual capacities.

The last written lease between the Dorwin Springs Sand and Stone Co., Inc., and the S. F. Clough Sand and Stone Co., Inc., dated June 6, 1935, gave to the latter the right to operate the sand and gravel bed herein concerned at a specified rate, and included the plants located on, and the use of the waters of, Onondaga Creek. The Dorwin Springs Sand and Stone Co., Inc., had obtained the mineral rights from the owner of the premises sometime prior thereto. In 1937, Seymour F. Clough took over the interests of the S. F. Clough Sand and Stone Co., Inc. The original written lease was renewed annually at a conference between the parties. The agreement was modified by the board of directors of the Dorwin Springs Sand and Stone Co., Inc., and thereafter continued annually by oral agreement. Seymour F. Clough turned the operation of the business over to his son, Francis B. Clough in 1946 or 1947, who continued the business throughout the period involved in this claim, with the acquiescence and approval of all other parties interested.

The court finds that such agreement was a lease in effect with Seymour F. Clough, tenant, and Francis B. Clough as a subtenant, which included the riparian rights, interest and privileges of the owner of the sand and gravel beds. Such lands were riparian to Onondaga Creek and claimants had a property interest in such creek and in the use of the waters thereof as such creek flowed its natural course before its diversion by the flood control project.

By reason of the diversion of the waters from their natural course and depriving the claimants of its use to claimants' damage, the State made a temporary appropriation thereof, for which it must make compensation.

At the time of such appropriation, claimants were operating a going concern and the determination of the amount of the award is somewhat complicated. The common measure of the amount of compensation in an appropriation case of the difference between the before and after values; or in the case of a tenant, the value of the lease at the time of appropriation, less rent reserved, will not apply. The taking was of an intermittent nature over a period of nearly two years. Claimants shut down

their processing plant in the winter months, and during such period at intervals operated part time, while at other times were compelled to completely close down.

. There is no question about claimants suffering damage, whether as lessee or licensee. In either event, compensation must be made. The State has offered no evidence on the subject of damages, except as it may have developed in the very thorough and detailed cross-examination of claimants' witnesses.

No fixed rule of damages, unvarying according to circumstances, is available. The court must take into consideration the usable value of the water of which claimants were deprived, the effect of the interference with the operation of claimants' business as a going concern, its production schedule, its loss of profits and the expenses necessarily incurred due to shutdowns. (*National Cellulose Corp.* v. *State of New York,* 292 N. Y. 438, 446–447.)

The court, in circumstances such as presented herein, is authorized to take into consideration, in fixing such damages, all testimony which is relevant as an aid in determination of what constitutes a just and equitable compensation to claimants for their loss through the temporary appropriation of their property and water rights by the State. (*National Cellulose Corp.* v. *State of New York, supra.*)

The claimants have the burden of proof to prove their damages. However, where the State is adjudged as the wrongdoer, and this wrong has rendered it impossible for the claimants to prove their damages with more certainty, it cannot complain of the alleged uncertainty. (*Spitz* v. *Lesser,* 302 N. Y. 490.) '' The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'' (*Bigelow* v. *RKO Radio Pictures,* 327 U. S. 251, 264–265.)

After rereading the record, a careful examination and study of the books and exhibits, and making numerous mathematical calculations and comparisons, the court has arrived at a figure which it believes to be fair and equitable to the parties concerned, and which is set forth in the findings of fact and conclusions of law filed herewith.